THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDDIE WILLIAMS *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 78-130

Opinion filed April 10, 1979.

Ralph Ruebner and Susan Solovy, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Alan D. Lyons, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendants, Eddie Williams and LaFare Johnson, were charged by information with two counts of murder. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1.) Pursuant to a jury trial in the circuit court of Cook County, defendants were found guilty of the murder of Curtis Woods. Each defendant was sentenced to a term of 25-50 years in the Illinois Department of Corrections.

Defendants now appeal from these convictions and present the following issues for our review: (1) whether an accomplice's testimony

was sufficient upon which to base a conviction; and (2) whether the trial court erred in refusing certain tendered instructions concerning accomplice testimony. Prior to a discussion of these issues we will review the testimony adduced at trial.

Jessie Blue testified that he was the building manager of 927 West Wilson, Chicago, Illinois. Blue stated that on July 3, 1976, the victim, Curtis Woods, resided at that address in apartment 212. Blue last saw Woods alive that afternoon when Woods was sitting on the fire escape drinking gin with several people. Blue next saw Woods in Woods's apartment at approximately 1 a.m. Woods was dead. At that time Blue contacted the police.

Michael Gricki testified that he is an officer of the Chicago Police Department. On July 4, 1976, at approximately 1 or 1:15 a.m., Gricki arrived at 927 West Wilson in response to a call. Once in apartment 212, Gricki observed Curtis Woods lying face down on the floor. Officer Gricki then notified additional officers, the coroner's office, an evidence technician and the crime lab. At trial Officer Gricki identified several photographs depicting the crime scene and the deceased.

James Nolan, an investigator with the Chicago Police Department, testified that on July 5, 1976, he was conducting a homicide investigation. That investigation concerned the death of Curtis Woods. Pursuant to this investigation Nolan arrested LaFare Johnson at 4550 N. Magnolia, Chicago, Illinois. The arrest occurred at approximately 2:55 a.m. At the time of the arrest Johnson was wearing brown and white checked pants and a tee-shirt. Red stains appeared on Johnson's pants. These pants were seized, inventoried and sent to the Chicago Police Department section of criminalistics.

After placing Johnson in custody, investigator Nolan and LaFare Johnson proceeded to the area of Sheridan Road and Wilson Avenue. Nolan located two other individuals, Eddie Williams and Michael Johnson, and placed them under arrest. A walking stick or cane was seized from Michael Johnson. It was inventoried and sent to criminalistics.

Michael Johnson testified that he was currently charged with the murder of Curtis Woods. Johnson stated that he was promised by an Assistant State's Attorney that Johnson would not be prosecuted if he told the truth.

On July 3, 1976, Michael Johnson was with LaFare Johnson, Eddie Williams and Robert Earl at 927 West Wilson, Chicago, Illinois. They proceeded to the fourth floor at that address to see James Brown. Brown was not there. The four individuals then went to the second floor near the fire escape and observed Curtis Woods. Woods and a friend were sitting

on the fire escape. Michael Johnson approached Woods and Woods' friend and requested a match and a drink of gin. Woods complied with his request. LaFare Johnson then requested a drink but Woods stated that he did not have "enough to go around." Woods' friend then departed. LaFare Johnson took the bottle from Woods and Woods departed for his apartment. LaFare Johnson followed Woods to Woods' apartment. When Woods entered the apartment LaFare Johnson pushed Woods. Woods turned around and LaFare Johnson pushed Woods on his bed. At this time Michael Johnson, Eddie Williams and Robert Earl were also in Woods' apartment. Woods asked LaFare Johnson what he wanted, and Johnson told Woods "to shut up." LaFare Johnson had a knife in his hand and stabbed Woods in the stomach. At the time of the stabbing Woods was sitting on his bed and "wasn't doing nothing," testified Michael Johnson. Robert Earl took a guitar out of a closet and struck Woods' head with the guitar. Eddie Williams took a knife and repeatedly stabbed Woods in the back.

Michael Johnson entered the washroom in Woods' apartment and found some valium. He took a valium bottle and kept it. When Johnson returned from the washroom Curtis Woods was on the floor. During the period of time Michael Johnson was in Woods' apartment, Johnson had a black cane in his possession. He testified that he never struck Curtis Woods with the cane.

Michael Johnson testified that at the time of the incident LaFare Johnson was wearing brown pants with white checks. Prior to the incident Johnson's pants were not blood stained.

After the murder Michael Johnson departed Woods' apartment for a liquor store near the apartment. Johnson remained at the liquor store for the night. He was joined there by LaFare Johnson, Eddie Williams and Robert Earl. Michael Johnson testified that at this time LaFare Johnson's pants were blood stained. Johnson also identified LaFare Johnson and Eddie Williams at trial.

On cross-examination Michael Johnson stated that he never struck Curtis Woods with a cane. He stated that he honestly expected to be cleared of any charge of murder. This expectation was based upon conversations between Michael Johnson and an Assistant State's Attorney. Johnson also stated that he did nothing to halt the murder of Curtis Woods. Johnson stated that he merely observed the incident.

Dr. Yuksel Kanacki testified that he is a physician and deputy medical examiner. He is a specialist in pathology and forensic pathology. Dr. Kanacki performed an autopsy upon Curtis Woods. The autopsy consisted of an external and internal examination. Dr. Kanacki observed stab wounds above the left eye and on the chin. There were stab wounds

at the rear of the head and behind the right ear. Additional stab wounds were observed on the front of the head. Dr. Kanacki observed multiple stab wounds on the victim's back, chest and abdomen.

Dr. Kanacki's internal examination revealed scalp hemorrhages and contusions of the brain. The victim's right lung had been penetrated by the stabbing and blood appeared in both chest cavities. Blood was drawn from the victim and sent to the toxicology laboratory. A blood sample was also given to an evidence technician of the Chicago Police Department. A hair sample was taken and submitted to the crime laboratory. Dr. Kanacki stated that the cause of death was stab wounds of the back and chest and cranial cerebral injury.

Thomas Davy, an Assistant State's Attorney, testified that he was employed in this capacity on July 5, 1976. At that time Davy was assigned to felony review. On July 5, 1976, Davy had a conversation with LaFare Johnson. Present during the course of this conversation were Davy, Johnson, investigator Nolan and investigator Rhodes. Davy advised LaFare Johnson of his rights and Johnson replied that he understood these rights. Johnson then told Davy that on the evening of July 4, 1976, Johnson was drinking on the fire escape at 927 West Wilson, Chicago, Illinois. Johnson stated that he later entered the apartment of Curtis Woods. Johnson indicated that he pushed Woods on to the bed and departed.

Davy also conversed with Michael Johnson in the presence of investigators Nolan and Rhodes. Michael Johnson was advised of his rights and stated that he understood these rights.

Stipulated testimony was then offered into evidence. This testimony was of technician Rajewski, a mobile evidence technician from the Chicago Police Department. Rajewski would have testified that he obtained a certain bottle of reddish fluid and an envelope containing hair. He received these items from Dr. Kanacki. Rajewski transported these items to the Chicago police department criminalistics laboratory and deposited them with the microanalyst.

Albert Pribek, an evidence technician with the Chicago Police Department, testified that on July 4, 1976, he responded to a call for a homicide investigation at 927 West Wilson, apartment 212. Pribek arrived at that address at approximately 1:45 a.m. Pribek was with Officer Nemec. They photographed the apartment and the body and collected physical evidence. They also processed items in the apartment for fingerprints.

Pribek collected some dry red material from the roof of a nearby garage. He also collected broken guitars, a broken broom and a knife handle. After the body of the victim was photographed Pribek recovered two broken knife blades which were underneath the body. Pribek

observed a large amount of a red substance on the bed. Pribek testified that this substance appeared to be blood. The materials collected by Pribek were transported to the crime laboratory, microanalysis section.

George Spreyne testified that he is a microanalyst for the Chicago Crime Laboratory. Spreyne examined the blood and found it to be Type O. He examined head hairs and believed them to have been taken from Curtis Woods. The blood from the garage, the broom, the guitars, the knife handles and the knife blades was Type O. The pants worn by LaFare Johnson at the time of the murder contained blood stains. Spreyne determined this blood to be Type O. Consequently, the items collected from the crime scene, the blood stained pants and the blood of the victim reflected Type O blood.

Following the testimony the State rested its case. The defendants made motions for directed verdicts and the motions were denied. Defendants then rested.

After closing arguments and the reading of the instructions to the jury, the jury found both defendants guilty of the murder of Curtis Woods. Defendants were sentenced to terms of 25-50 years in the Illinois Department of Corrections.

Defendants contend that their guilt was not proven beyond a reasonable doubt. Defendants base this contention upon the fact that their convictions followed testimony from an accomplice who had been promised that he would not be prosecuted for murder if he testified against defendants.

The cases cited by defendants (*People v. Williams* (1976), 65 Ill. 2d 258, 357 N.E.2d 525; *People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665; *People v. Hermens* (1955), 5 Ill. 2d 277, 125 N.E.2d 500), are not helpful to defendants' position. These cases do state the law applicable to a case concerning accomplice testimony but are factually dissimilar to the case at bar.

■■ When it appears that a witness has hopes of a reward from the prosecution, his testimony should not be accepted unless it carries with it an absolute conviction of truth. (*People v. Williams* (1976), 65 Ill. 2d 258, 267, 357 N.E.2d 525.) While it is true that testimony of a witness who is an accomplice is to be viewed with suspicion and is to be viewed by the jury with caution, it is also clear that such evidence, if it is enough to convince the jury beyond a reasonable doubt, is sufficient to sustain a conviction. *People v. Callinan* (1976), 44 Ill. App. 3d 18, 23, 357 N.E.2d 1291. See *People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665; *People v. Hermens* (1955), 5 Ill. 2d 277, 125 N.E.2d 500.

■■ We have no doubt that the jury was impressed with the testimony of

Michael Johnson. However, we hasten to note that Johnson's rendition of the murder of Curtis Woods was corroborated by the testimony of the medical expert, Dr. Kanacki. We need not iterate the findings of Dr. Kanacki, which we have previously set forth in detail. It is sufficient that Dr. Kanacki's testimony as to the cause of death was consistent with Michael Johnson's testimony. This testimony, coupled with the physical evidence and testimony of the microanalyst in the case at bar, was clearly sufficient for the jury to conclude that defendants had murdered Curtis Woods. We have no reason to believe that the testimony of Michael Johnson carried with it anything less than an absolute conviction of truth. *People v. Williams* (1976), 65 Ill. 2d 258, 357 N.E.2d 525.

■■ Defendants next contend that the trial court erred in refusing certain tendered jury instructions. The instructions tendered and refused read as follows:

> "When a witness testifies that he was involved in the commission of a crime with a Defendant, that testimony is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case. In determining the credibility of such a witness, you may take into consideration whether the witness has been promised consideration in relation to his punishment for his testimony.
>
> When it appears that the witness has hopes of a reward from the Prosecution, his testimony should not be accepted unless it carries with it an absolute conviction of its truth."

The instructions concerning accomplice testimony tendered and given to the jury (People's No. 2, Defense No. 2) read as follows:

> "You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case." Illinois Pattern Instructions, Criminal, No. 1.02 (1968) (hereinafter IPI).
>
> "An accomplice witness is one who testifies that he was involved in the commission of a crime with the Defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case. [In determining the credibility of such a witness, you may take into consideration whether the witness has been promised consideration in relation to his punishment for his testimony.]" IPI Criminal No. 3.17, as modified by court (bracketed material).

Defendants contend that the court erred in giving to the jury instructions referring to "an accomplice." Defendants argue that by giving the aforementioned instructions to the jury, which included the term "accomplice," the trial court assumed an association in crime between the witness and defendants. Defendants note that Mr. Justice Schaefer's dissent in *People v. Parks* (1976), 65 Ill. 2d 132, 139, 357 N.E.2d 487, is supportive of this position.

Defendants' position cannot be reconciled with Illinois Supreme Court Rule 451(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 451(a)) which states, in relevant part:

> "Whenever Illinois Pattern Instructions in Criminal Cases (IPI-Criminal) contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI-Criminal instruction shall be used, unless the court determines that it does not accurately state the law. * * *"

Defendants' argument is actually directed toward the existence of Illinois Supreme Court Rule 451(a) and IPI Criminal No. 3.17. The trial court was bound to give instruction 3.17 once the court found that instruction applicable to the case at bar. Defendants do not contend that this case does not concern accomplice testimony. Consequently, defendants have no other choice than to accept the dictates of Illinois Supreme Court Rule 451(a) and the terminology of IPI Criminal 3.17. We believe that this instruction, as modified by the court, adequately reflected the law to be applied to the case at bar.

We have found that defendants were proven guilty beyond a reasonable doubt and that the questioned instruction given to the jury was proper. Accordingly, the judgments of conviction entered by the circuit court of Cook County are affirmed.

Affirmed.

PERLIN and HARTMAN, JJ., concur.