THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BARRY L. BROWN, Defendant-Appellant.

Third District    No. 79-975

Opinion filed December 5, 1980.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

After a jury trial, in which Brown was found guilty of attempt burglary, the trial court sentenced Brown to a term of four years' imprisonment. On appeal, the defense argues that the conviction should be reversed because: (1) the evidence established only mere preparation for, and not a substantial step toward, the commission of the offense; (2) the evidence established that the defendant was not acting as a principal and that he did withdraw from the burglary and prevent its completion; and (3) the evidence established that the defendant voluntarily abandoned his criminal activity and purpose. The defense also seeks a reversal or reduction in the degree of the offense or sentence, based upon the trial court's asserted abuse of discretion in sentencing. The final issues concern the failure to have the closing arguments transcribed. The defense argues that such failure requires a reversal, or alternatively, a finding that the defendant received ineffective assistance of counsel, also requiring a reversal.

All the evidence in the record came from the State's four witnesses. Assistant State's Attorney for Tazewell County, William Brown, was the key witness for the State. According to State's Attorney Brown, the defendant Barry Brown (no relation) had asked to speak to an attorney in the State's Attorney's office in the early morning hours of September 5, 1979, after he and two other persons had been arrested by police, while they were in a pick-up truck, on property next to Hillside Motors in Creve Coeur. The back door of Hillside Motors had been kicked in during the early morning hours of September 5. According to William Brown, defendant Brown told him that on the night of September 4, 1979, he and another man, Randall Schultz, had been driving around Peoria in Schultz' truck. They had picked up Maxwell Babcock, another young man, whom defendant Brown had not previously known. While in Peoria, Babcock suggested that they steal a car and go out and wreck it. He said he knew a place where they could steal a car.

Defendant Brown informed attorney Brown that he and Schultz didn't really want to commit the burglary but that they went along to Hillside Motors in Creve Coeur, the place where the theft was to occur. When they arrived there, Babcock told the two to go around to the back

of the building and kick the door in, while he stood lookout in front. Babcock, according to his plan, was then to enter the building, take keys and money, while the other two stood lookout in front. Following the plan, Brown and Schultz went around to the back of the building and Brown kicked at the door twice, but it did not open. Schultz kicked once and it came open. At this point, Brown told the Assistant State's Attorney, he got "scared" and decided to end his participation in the crime. He and Schultz, without entering the building at all, went to the front of the building to Babcock. They told him that they were leaving, that the burglary was "bullshit" and that they were taking their truck with them. Babcock did not want to leave, but the other two told him they were going and the truck was, too. Babcock then got in the truck with Brown and Schultz.

As they were leaving the parking lot of the service station, next to Hillside Motors, the police arrived and stopped them. That was the substance of Assistant State's Attorney Brown's testimony. The two officers who arrived to find the three young men in the pickup truck testified to that fact. It was they who, at defendant Brown's request, delivered him to the Assistant State's Attorney. The only other witness to testify was the owner of Hillside Motors, who testified that the back door was kicked in during the early morning hours of September 5, 1979. He also stated that nothing was missing. The case went to the jury which returned a verdict of guilty of attempt burglary against defendant Barry Brown.

At the sentencing hearing, the defense argued that Brown's age, 19, his problems with alcoholism, and his voluntary abandonment of the burglary were strong mitigating factors in support of a minimum sentence of 2 years. The State, pointing to the defendant's criminal history, urged the maximum of 5 years. Defendant Barry Brown was put under court supervision in 1976, as a juvenile, for shoplifting theft. In 1977, he was sentenced to probation after a conviction for unlawful restraint. The probation was later revoked due to a subsequent 1977 theft charge. His other conviction for the traffic offense of attempting to elude resulted in a 120-day stay at the penal farm at Vandalia. The trial court, noting this history and that the defendant had committed the attempt burglary and had done nothing to rectify it, sentenced the defendant to four years' imprisonment. Section 8—4(c) provides that for attempt to commit a Class 2 felony (burglary), the sentence is the sentence for a Class 3 felony. (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4(c), 19—1(b).) The sentence for a Class 3 felony "shall not be less than two years nor more than five years." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(6).) The defendant appeals from his conviction and sentence.

■■■ The defense's first argument is that the defendant's acts in kicking the door were mere preparation and did not constitute a substantial step

toward the commission of the burglary. By this argument, the defense seeks to counter the State's contention that the attempt burglary was completed once the door was kicked in by defendants Brown and Schultz. We find, without difficulty, that the kicking in of the door was not merely preparation to the burglary but that it was a substantial step towards its completion. Once the door has been opened, the only step remaining is the entry into the building. To sustain a conviction for attempt burglary, the State must show that the defendant, with the intent to commit a specific offense, did an act which constituted a substantial step toward knowingly entering the building with the intent to commit a felony or theft therein. (*People v. Fletcher* (1978), 72 Ill. 2d 66, 377 N.E.2d 809; Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 19—1.) The evidence supports a jury finding that a substantial step was taken with the kicking in of the door. With regard to the intent necessary, it is held that one who aids or abets another in the commission of an offense may be charged with the intent of the principal. (*People v. Krouse* (1975), 30 Ill. App. 3d 446, 333 N.E.2d 17; *People v. Barnes* (1971), 2 Ill. App. 3d 461, 276 N.E.2d 509; Ill. Rev. Stat. 1979, ch. 38, par. 5—2.) While we shall return to the question of the weight and sufficiency as to Brown's intent later in this opinion, we conclude that the evidence presented was sufficient for the jury to have concluded that Brown was chargeable with Babcock's intent under the principles of accountability. The evidence, in the form of Brown's admissions on the night of the crime, indicated that he had kicked at the door, knowing at the time that Babcock intended to enter the premises to commit theft. That evidence is minimally sufficient for Brown to be charged with Babcock's intent to enter and commit a theft. Thus, there was evidence to show attempt burglary.

The defense counterargument is that even if the evidence was sufficient to show attempt burglary, the conviction should not have been entered because of the fact that defendant Brown was not acting as a principal and because he effectively withdrew from the criminal enterprise, while at the same time preventing its completion. Reliance is thus put upon the accountability statute (Ill. Rev. Stat. 1979, ch. 38, par. 5—2), which states in pertinent part:

"A person is legally accountable for the conduct of another when:

＊　＊　＊

(c) Either before or during the commission of an offense, and with intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. However a person is not so accountable, unless the statute defining the offense provides otherwise, if:

* * *

(3) Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense."

The defense argues the applicability of the withdrawal provision of subsection (c)(3) to the defendant's conduct in this case. It is argued that the uncontradicted evidence indicates that prior to completion of the burglary, defendant Brown, along with Schultz, terminated participation in the crime and made a proper effort to prevent the commission of the offense, the latter by informing Babcock that they were leaving and taking the truck with them. Based upon the withdrawal, the defense contends that the defendant ought not to have been convicted of attempt burglary. The State, for its part, relies upon a recent decision in the First District, *People v. Davis* (1979), 70 Ill. App. 3d 454, 388 N.E.2d 887, wherein the court stated:

"[T]he weight of authority appears to be that once the elements of criminal attempt are complete, abandonment of the criminal purpose will not constitute a defense to the charge of attempt." (79 Ill. App. 3d 454, 456.)

The State contends that the defendant's withdrawal has no effect upon his responsibility for the offense of attempt burglary because that offense, as opposed to the burglary offense, was completed prior to his withdrawal. It is argued that the requirements of subsection (c)(3) of the statute were not satisfied in that the withdrawal did not come "before the commission of the offense."

■■ There are two lines of inquiry to be pursued in addressing the parties' arguments on this issue. The first is whether the withdrawal provisions of the accountability section are applicable here and operate to negate the defendant's conviction for attempt burglary. The second is whether in Illinois, abandonment of the criminal purpose, coupled with efforts to prevent the commission of the crime already begun, will operate as a defense to the charge of attempt. We turn initially to the accountability section and its withdrawal provisions. Under subsection (c), a person is accountable for the acts of another if, before or during the commission of an offense, and with intent to promote the commission, he aids and abets the other in the planning or commission of the offense. Under this provision, as noted, Brown may be held accountable for Babcock's actions and intent because of his aid prior to and during the commission of the

offense. However, subsection (c)(3), as already noted, removes accountability if before the commission of *"the* offense" (emphasis added), the person terminates his efforts to promote such commission and makes a proper effort to prevent the commission of the offense. The withdrawal provision speaks in terms of withdrawal from the commission of "the offense." Clearly, from the context of its use, the referent for "the offense" is set forth in subsection (c), being that offense in which the defendant aids or abets another. So, the question of withdrawal must focus upon the offense or offenses which the defendant aided or abetted "in the planning or commission of." In the factual context of the instant case, both burglary and attempt burglary are possible referents under the statute. Babcock and Schultz and Brown planned both the attempt burglary, that is the kicking in of the door, and the burglary, the subsequent entry and theft. The planning of the burglary necessarily encompassed planning of the lesser offense of attempt. Thus, "the offense" in subsection (c)(3) has two referents with respect to withdrawal, burglary and attempt burglary. As to the burglary offense, Brown's withdrawal would have been effective, in that it occurred prior to the commission of any burglary. However, as to the offense of attempt burglary, his withdrawal was ineffective to prevent application of accountability to his actions, for the reason that such withdrawal did not occur before the commission of the attempt burglary. We conclude that the withdrawal provisions of the accountability statute were not applicable to the attempt burglary charge in that the evidence supported a finding that the offense had occurred prior to the time of the defendant's withdrawal.

Having concluded that the withdrawal provisions of the accountability section do not necessitate reversal of the defendant's conviction for attempt burglary, we must next inquire as to whether the voluntary termination of his criminal purpose, coupled with his efforts to prevent the commission of the burglary, constitute an abandonment which will act as a defense to the charge of attempt burglary. As already indicated, in *People v. Davis*, the First District found that the weight of authority was against abandonment as a defense to an attempt charge, and it concluded that Illinois law was in accordance with the weight of authority. In so concluding, the court relied upon *People v. Hiller* (1955), 7 Ill. 2d 465, 470, 131 N.E.2d 25, as well as *People v. Twiggs* (1963), 223 Cal. App. 2d 455, 464-65, 35 Cal. Rptr. 859, 864; *People v. Carter* (1925), 73 Cal. App. 495, 238 P. 1059; *Wade v. State* (1974), 132 Ga. App. 600, 208 S.E.2d 613; *Howard v. Commonwealth* (1966), 207 Va. 222, 148 S.E.2d 800; 21 Am. Jur. 2d *Criminal Law* §110 (1965); 22 C.J.S. *Criminal Law* §76 (1961); Annot., 76 A.L.R.3d 842, 860 (1977). (70 Ill. App. 3d 454, 456-57.)

The problems with the *Davis* case itself and the authorities relied upon in it to support the rule enunciated is that none of them involved a voluntary abandonment. In *Davis*, the facts indicated that the abandonment of the criminal theft occurred not voluntarily, but in response to observation by a store employee. Similarly, in the California cases, either abandonment was not raised on the facts (*People v. Twiggs*) or the facts indicated that any abandonment was the result of intervening outside agents (*People v. Carter*). In *Wade v. State*, the Virginia case, the evidence indicated that the defendant took money from a drawer and then put it back when he was noticed. Thus, no voluntary abandonment was shown on the facts. As to the secondary authorities, the A.L.R. Annotation relies upon *Carter*, *Twiggs* and *Wade*, while the Am.Jur. comment is supported by *Wade* and another California case. The cases referred to in *Davis* and in the authorities did not involve a voluntary abandonment coupled with efforts to prevent any further criminal activity. Similarly, the Illinois Supreme Court case cited in *Davis*, *People v. Hiller*, did not involve the voluntary abandonment of the criminal purpose, termination of participation in the crime, and efforts to prevent any further criminal acts. What *People v. Davis* and the cases it relies upon do is to recognize what has long been acknowledged in Illinois: that a defendant who is interrupted and prevented from completing the commission of an offense by an outside agency is not relieved of responsibility for attempting the offense. (*Cf. People v. Dogoda* (1956), 9 Ill. 2d 198, 203, 137 N.E.2d 386; *People v. Lardner* (1921), 300 Ill. 264.) These cases have not decided the question of voluntary abandonment, termination of participation, and efforts to prevent further criminal conduct as a defense to an attempt charge.

■■ The facts in the instant case present that issue. They show, unequivocally, Brown's voluntary abandonment of his criminal purpose, his termination of participation in the crime and his actions to prevent the burglary from occurring. In argument to the court the State conceded that the defendant prevented the burglary from occurring, and it is evident from the trial judge's comments at sentencing that he viewed the case as one of voluntary abandonment with efforts to prevent the commission of the offense. As such, the facts of the instant case squarely present a question of first impression in Illinois: whether abandonment of criminal purpose, coupled with termination of criminal activity and efforts to prevent further criminal acts will act as a defense to a charge of attempt. Noted and distinguished commentators on criminal law are strongly supportive of a rule which would permit such abandonment as a defense, at least in circumstances such as are present in this case. (See Perkins, Criminal Law 589-90 (2d ed. 1969); LaFave and Scott, Criminal Law §60, at 450 (1972); G. Dix and M. Sharlot, Criminal Law 739 (1973).) Several States have aligned themselves with this progressive view of voluntary abandonment as a defense to an attempt charge. (See *People v.*

*Johnson* (1978), 41 Colo. App. 220, 585 P.2d 306; *State v. Cox* (1979), ___ Minn. ___, 278 N.W.2d 62.) In Colorado and Minnesota the legislatures have specifically made abandonment a defense to the charge of attempt. While this court supports views of the commentators on this question and the actions of the Colorado and Minnesota legislatures, the matter is not, effectively, for us to decide. The responsibility for defining criminal offenses and defenses is with the legislature. If abandonment is, in certain circumstances, to be a defense to the offense of attempt, which we think it ought to be, then such provision must be made by the legislature. We are unable to find anything in the Criminal Code indicating the Illinois legislature's intent to create such a defense. Nor, after a diligent search of the case law, can we find previous Illinois cases indicating that such a defense is, or was available in Illinois either by statute or under the common law. We would urge the legislature to seriously consider the actions taken in Minnesota and Colorado as well as the arguments of the commentators with regard to the salutary and beneficial, as well as equitable, effects from establishing the defense of voluntary abandonment. However, the defense is not available to defendant Brown in the instant case.

The defense then argues that this court, pursuant to its powers under Supreme Court Rule 615, should reverse the judgment, reduce the degree of the offense, or reduce the sentence. (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b).) It has long been recognized that Rule 615(b) does not give appellate courts the power to modify judgments of the trial courts purely upon our conclusion that the case was wrongly decided, without a basis for such a conclusion in the record. Our powers, while considerable, are not unlimited and they may not be used capriciously. As recognized, they should be exercised with caution and circumspection only in those cases which demand it. The defense argues that we should utilize our powers under Rule 615(b)(3) to reduce the offense defendant was convicted of from attempt burglary to criminal damage to property under $150. While we may agree with the propriety of such a reduction in the circumstances of the case, we are constrained to conclude that such a reduction is not available in the instant case. Recently, this court stated the law with respect to reductions under Rule 615(b)(3):

> "A court of review, however, will not reduce the degree of offense purely out of merciful benevolence. There must exist some evidentiary weakness upon which the court can rely in reducing the degree of the offense." (*People v. Mau* (1980), 88 Ill. App. 3d 924, 925.)

We have also noted the established rule that a reduction under Rule 615(b)(3) is available only where lesser included offenses are involved. (*People v. Walter* (1980), 84 Ill. App. 3d 1199 (Rule 23 order), citing

*People v. Trinkle* (1976), 40 Ill. App. 3d 730, 353 N.E.2d 18; *People v. Towers* (1974), 17 Ill. App. 3d 467, 308 N.E.2d 223.) In the instant case, we are presented with no evidentiary deficiencies which would support action to reduce the degree of the offense under Rule 615(b)(3). As noted in our discussion of the sufficiency of the evidence, the admitted facts are sufficient to support the conviction under principles of accountability. Further, criminal damage to property is not a lesser included offense of attempt burglary, in that all the elements of the former are not included in the latter. (See *People v. Smith* (1980), 78 Ill. 2d 298, 306, 399 N.E.2d 1289.) For the above reasons, we do not act to reduce the degree of the offense.

The defense then urges this court to reduce the sentence imposed upon Barry Brown in light of his action in abandoning the criminal activity and preventing further crimes. The rules with respect to reductions in sentence under Rule 615(b)(4) are also well established. We have indicated that we will not reduce the sentence set by the trial court unless it be found to be a substantial departure from the fundamental law and its spirit and purpose or unless it be found to be disproportionate to the nature of the offense. (*People v. McDole* (1977), 48 Ill. App. 3d 663, 665-66, 359 N.E.2d 226; *People v. Cross* (1975), 27 Ill. App. 3d 785, 787, 327 N.E.2d 81.) In *Cross* we noted, explicitly, that "penalties must be determined both according to the seriousness of the offense and with the objective of restoring defendant to useful citizenship." (27 Ill. App. 3d 785, 787.) Concerning the relationship between these goals, the First District's analysis in *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 648, 364 N.E.2d 491, is instructive in the circumstances of the instant case. They stated:

> "Generally a sentence on review will not be disturbed unless it is 'greatly at variance with the purpose and spirit of the law or manifestly in excess of the proscription of * * * the Illinois constitution which requires that all penalties should be proportioned to the nature of the offense.' [Citations.] There are cases, however, which call for this court to reduce the sentence which has been imposed even when such sentences are within the statutory limits. [Citations.] No precise formula exists pinpointing which sentences are to be affirmed or reversed. Consequently, many sentences are affirmed with little comment. This case, however, calls for a careful assessment of the trial court's appreciation of the mandate now called for by article I, section 11, of the Illinois Constitution of 1970.
>
> This State's fundamental law requires that 'All penalties shall be determined both according to the seriousness of the offense and *with the objective of restoring the offender to useful citizenship.*'

(Emphasis added.) (Ill. Const. 1970, art. I, §11.) Usually the cases have treated this mandate as calling for a balancing of the retributive and rehabilitative purposes of punishment. Looked at from this perspective, one might justify a sentence which has been given merely by determining whether or not the trial judge considered the possibility of rehabilitation as compared to a proper retributive sanction based upon the seriousness of the offense and the character of the defendant and his conduct. If this be the appropriate analysis any record which demonstrates an acknowledgement of the rehabilitative purpose could be affirmed providing the sentence was within the statutory limits.

The constitutional mandate, however, requires more. Not only must the judge consider the rehabilitative or restorative factor, he must also act on it as an objective of his sentence. Some degree of discretion is permitted within the legislative perimeters establishing our indeterminate system of sentencing, but the judge may not resign to total retribution one who has a chance of future restoration to useful citizenship in the free society."

Under the circumstances of the instant case, we find that the sentence imposed upon defendant Barry Brown was disproportionate to the nature of the offense and that the trial court abused its discretion when it entered the four-year sentence. The paramount consideration in our conclusion on sentencing is the rehabilitative potential shown by the defendant's voluntary abandonment of his criminal behavior, his withdrawal from criminal activity, and his conduct in preventing further criminal actions by Babcock.

These positive actions by the defendant in the midst of criminal endeavors are clearly and indisputably set forth in the record. Barry Brown, having had a few drinks, fell in with Max Babcock when Babcock suggested that they steal a car and go out and wreck it. Brown said he didn't want to do it, but he and a friend went along anyway. They went along even to the point of kicking at the back door of Hillside Motors. However, as soon as they were successful in getting that door open, that is as soon as the first criminal step was concluded, Barry Brown and Schultz decided against any further participation in the crime. They recognized the stupidity of their conduct (it was "bullshit"), told Babcock so, and told him they were leaving in the pickup truck. Babcock unwillingly joined them when firmly told they were leaving *in the truck.* As the State conceded in argument on the instructions, and as the trial court took for granted when sentencing, the defendant's action in terminating participation and telling Babcock so prevented the burglary from occurring. When apprehended by the police, Brown indicated he wanted to speak with an Assistant State's Attorney. To the prosecuting authorities he then

frankly and forthrightly admitted to his participation in the criminal enterprise. This latter act in immediately confessing to the prosecuting authorities is not the act of an incorrigible criminal, nor is the defendant's action in voluntarily abandoning the criminal activity. This young man, in the midst of a crime in which he had joined with others to commit, made several difficult and very positive decisions. They were difficult, given his age, background and the circumstances. His act was positive and in the direction of lawful conduct. We find that the evidence concerning all the circumstances of this offense indicates a strong rehabilitative potential in Barry Brown. We conclude that the trial court failed to give sufficient consideration to the defendant's positive actions and their relationship to the rehabilitative goals of sentencing. We would note as well the defendant's age, 19, and his confessed alcohol problem.

We are mindful of the defendant's juvenile record and criminal history. We are mindful of this record, as was the trial court, but we cannot agree with the trial court that the defendant had done nothing to rectify his actions in furtherance of the burglary. He had abandoned his criminal purpose voluntarily, prevented the commission of any further crime, and confessed to the authorities voluntarily. As noted, these acts are strong indications of rehabilitative potential which were not sufficiently considered and acted upon by the trial court. As to his prior trouble, we are mindful, too, that it is largely the record of a juvenile offender. Giving consideration to all the evidence and to the sentencing factors called for by the constitution, we find that the four-year sentence imposed upon Barry Brown was disproportionate to the nature of the offense. We hereby exercise our powers under Rule 615(b)(4) and reduce the sentence to two years' imprisonment, with directions that Barry Brown receive alcohol rehabilitation treatment during his term of imprisonment.

■■ As a final matter, we are faced with the defense contention that the conviction should be reversed because of the failure to have transcribed the final arguments in the trial below. It is clearly established that responsibility for preservation of the record rests with the defendant. (*People v. Smith* (1969), 42 Ill. 2d 479, 248 N.E.2d 68.) We find no basis in the record to justify a reversal and remand for a new trial because of defense counsel's failure to ensure that final arguments were preserved. As to the defense's supplementary argument that such failure constituted ineffective assistance of counsel requiring reversal, we reject that as well. Ineffective assistance of counsel is shown in the conduct of a trial as a whole, and to support such a contention, the defendant must show that he was prejudiced by the ineffectiveness of his counsel. Here the record reveals most able assistance of counsel throughout all stages of the proceedings. Additionally, the defense is unable to indicate or suggest the

prejudicial nature of the prosecution's final argument. We find no basis to reverse the judgment on the basis of the lack of the transcription of final arguments.

In accordance with the views in this opinion, we affirm the conviction, and we reduce the sentence of defendant Barry Brown to two years' imprisonment with directions for alcohol abuse treatment.

Conviction affirmed and sentence reduced.

SCOTT and BARRY, JJ., concur.