THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALICE ONG, Defendant-Appellant.

Third District    No. 80-232

Opinion filed April 3, 1981.

Edward Zukosky, of Zukosky & Tracy, of Wenona, for appellant.

Donald Knuckey, Assistant State's Attorney, of Henry, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant, 24-year-old Alice Ong, appeals from a conviction for arson (Ill. Rev. Stat. 1979, ch. 38, par. 20—1(a)). She was sentenced to four years' probation, including six months' imprisonment in the Marshall County jail, restitution of $1,500, and $500 in fines.

Three occurrence witnesses testified at the trial of the defendant. Roger Wilson testified that, on the evening of September 12, 1978, he and his brother Larry went out driving in Roger's Chevelle automobile. Larry drove. They drove to the home of Alice Ong and invited her along. The three of them then drove into the town of Wenona, purchased three six-packs of beer and a pint of whiskey, and drove around, at first in town, and later in the country. Roger testified, "I think we each had one [beer]—broke it. * * * All three of us" were drinking. As they drove around, they passed a vacant house, owned by Robert Dose, that had been occupied by Alice Ong during the summer and fall of 1977. Roger testified that, as they drove past, Alice said, "Let's burn the house down because I don't like anybody moving in there." Roger testified that Alice said she had bad memories of the house, arising from the time she lived there with her ex-husband. Roger testified that they drove around the section and Alice again said, "Let's burn it down." On cross-examination, Roger said that Alice had made only one statement about burning the house.

Roger testified that Larry pulled the car into the driveway next to the Dose house, and that Roger got out and went behind the car to "go to the bathroom." Roger testified that, when he returned to the car, Alice was gone. He testified that he next saw Alice and Larry walking around the house. He saw a reflection in the window "like a fire * * * inside the house." He indicated on a prosecution diagram that he saw this "reflection" in a livingroom window of the house.

On cross-examination, Roger testified that, just before they entered the driveway, Larry said, "I'm going to burn the house down." Roger acknowledged that, on December 5, 1979, he told Charles Lore, the deputy sheriff of Marshall County, that Alice was in the house alone and that she had lit the fire. He also told Deputy Lore that, in response to Alice's request, he (Roger) handed her a book of matches. At that time, he told Deputy Lore, Alice was standing in the kitchen of the house and he was standing on the porch, just outside the kitchen. He told Deputy Lore that Alice lit the kitchen curtains on fire. At trial, Roger admitted that all of these statements to Deputy Lore were false.

It was also brought out at trial that, on December 26, 1979, at a preliminary hearing for his brother, Larry, who had also been charged with arson, Roger testified that Alice had remained in the car, and that only Larry had entered and burned the house. At Alice's trial, Roger testified that this statement was true when he made it.

Roger testified that he had called Alice on February 1, 1980, a month before the trial, and invited her to go riding around with him. He testified that he had not spoken to her prior to this for over a year, and that this had hurt his feelings "a little." He testified that he had animosity toward Alice Ong, and when asked, "[I]s your desire to do everything you can to get her into trouble?" he answered, "Well, I won't—I'm going to try." On redirect, when asked to explain this last remark, Roger said, "She's just at fault as everybody else is. She was out there too. * * * I think she lit the curtains on fire, too, because she was the one in the room." Roger later testified that Alice had told him that she had gone into the house and, while inside, had been "flickering her lighter." Roger acknowledged that Alice had never admitted setting the house on fire. He also acknowledged that he had seen neither Larry nor Alice in the house and had no personal knowledge of what transpired inside. Roger had been charged with the crime of arson, but the State chose not to prosecute him.

The second occurrence witness was Larry Wilson. Larry had pleaded guilty to arson of the Dose house, and was a prisoner in the Marshall County jail at the time he testified. Larry, likewise, testified that he drove Roger's car on the night in question. He testified that they picked up Alice, drove to Wenona, and there bought beer and whiskey. They proceeded to drive around town and into the country. They drove past the

Dose house without incident. Larry testified that the second time they approached the Dose house, Alice mentioned that she was thinking of burning it down, because she had bad memories of the time she lived there with her ex-husband. Larry testified that, by that time, all but four cans of beer and a small amount of whiskey had been consumed. Larry testified that he had drunk four or five shots of whiskey, that Roger had done the same, and that Alice had drunk the rest of the whiskey. When asked about his state of sobriety at the time of the incident, Larry replied, "I was feeling pretty good." When asked about Alice's state of sobriety, he replied, "Feeling pretty good, too."

They drove past the house and proceeded to go around the four-mile section, making a series of left turns. Larry testified that Alice stated she wanted to go back to the house. He testified that he thought she wanted to go back to finish her beer. When asked if Alice had made any further statements about wanting to burn the house, Larry replied, "I think she did." This, said Larry, occurred as they approached the house. Larry then pulled the car into the driveway. Larry testified that Roger went to the back of the car, but that he and Alice went into the house through the back door. The house was dark. He stayed within three feet of the kitchen door and set fire to a curtain on the window of the kitchen door. Alice walked through the kitchen and into the livingroom. Larry testified that he saw two flashes of light from the living room. He and Alice then exited the house. Larry testified that, as they drove around for three or four hours that evening and night, Alice sat on a pillow, between himself and Roger, who were seated in the front bucket seats of the Chevelle. Larry did not know whether the car stereo was on that evening. Larry testified that his brother, Roger, was in love with Alice Ong, and had dated her.

Alice Ong testified in her own behalf. She denied having made any statements about wanting to see the house burned or having bad memories about it. She stated that during her childhood the house had been owned by her grandparents, and before that by her great-grand-parents. She had lived there in 1977, with her ex-husband, during a period of reconciliation subsequent to their divorce. She testified that she and her ex-husband were still close, and that she had only good memories of the house. She testified that she drank only two beers on the evening of September 12, and that if she drank more, she would have become sick. She denied having consumed any whiskey. It was brought out that, at the preliminary hearing for Larry Wilson, she testified that all three of them had been "drunk" on the evening of September 12. Alice testified that she rode in the back seat of the Chevelle, and that the car stereo was played very loudly during the entire time they were in the car.

Alice testified that Larry said, "Wouldn't it be fun to burn that house down." She said that she and the Wilson brothers laughed at this remark,

and that she thought Larry was joking. She testified that Larry drove to the Dose house to steal gasoline. She testified that Larry had driven to another farm, earlier that evening, and had tried to steal gasoline, but was unable to because the storage tank there was locked. She testified that Larry went into an outbuilding on the Dose property to look for gasoline and then went into the house. She testified that she remained in the car the entire time. Alice testified that she did not have a romantic relationship with either Roger or Larry. She testified that Roger had called her some 10 days before the trial, and told her that, if she would go out drinking and driving with him, he would tell the truth at her trial. She declined the invitation.

All of the occurrence witnesses testified that, after they left the Dose house, they drove to a cemetery. From there, they saw the house burn and returned briefly for a closer look. The testimony is in dispute as to what words were spoken during these events.

The defendant's first contention on appeal is that she had not been found guilty beyond a reasonable doubt. After examination of the entire trial transcript, we cannot agree. Guilt or innocence is a matter to be determined by the jury.

> "Unless the evidence is so palpably contrary to the verdict or so unsatisfactory as to raise a reasonable doubt of defendant's guilt, a reviewing court will not set aside a jury's verdict, for any inconsistencies or discrepancies in the testimony of the witnesses, any possible bias or interest affecting the credibility of the witnesses, and the weight to be attributed to the testimony of the witnesses are matters peculiarly within the province of the jury." (*People v. Seiber* (1979), 76 Ill. App. 3d 9, 12-13, 394 N.E.2d 1044.)

The defendant argues that it would have been physically impossible for Larry Wilson to have seen two flashes of light come from the livingroom while he stood near the kitchen door. We have examined the floor plan of the Dose house, and agree that one cannot see directly into the livingroom from the rear of the kitchen, because the two rooms are separated by a hallway and there is no line of sight from the rear of the kitchen into the livingroom. Nevertheless, this fact does not totally discredit Larry Wilson's testimony. Had the origin of light which he claims to have seen been the hall and not the livingroom beyond it, the relevant implication, that Alice had lit a match or lighter while in the house, would not thereby be disturbed. Furthermore, Larry claims only to have seen two flashes of light. He does not claim to have seen Alice perform any act in the livingroom. The properties of light are such that it can be perceived, in a dark house, even when its source is not on a "line of sight" with the viewer. Therefore, defendant's contention, that Larry's testimony is contrary to the physical evidence, is not conclusive.

■■ The defendant also argues that one cannot be convicted solely on the testimony of accomplices. "While it is true that testimony of a witness who is an accomplice is to be viewed with suspicion and is to be viewed by the jury with caution, it is also clear that such evidence, if it is enough to convince the jury beyond a reasonable doubt, is sufficient to sustain a conviction." *People v. Williams* (1979), 70 Ill. App. 3d 489, 493, 388 N.E.2d 1095; *People v. Callinan* (1976), 44 Ill. App. 3d 18, 23, 357 N.E.2d 1291.

■■■ The defendant next argues that the evidence does not support guilt as a principal and that the jury was improperly instructed to consider the defendant's guilt or innocence under the accountability statute (Ill. Rev. Stat. 1979, ch. 38, pars. 5—1, 5—2). The information charged the defendant as a principal. "An accountability instruction should not be given when the evidence establishes that defendant was a principal and not an accessory." (*People v. Lusietto* (1976), 41 Ill. App. 3d 205, 208, 353 N.E.2d 385.) However, "[e]ven slight evidence upon the theory of accountability will justify the giving of an instruction." (*People v. Thomas* (1979), 72 Ill. App. 3d 28, 36, 389 N.E.2d 1316.) Under the facts of this case, the giving of Illinois Pattern Instructions, Criminal, No. 5.03 (1968), (hereinafter IPI), the accountability instruction, was proper. It is well established that there is no fatal variance where the proof establishes guilt as an accessory and the indictment or information charges the defendant as a principal. (*People v. Touhy* (1964), 31 Ill. 2d 236, 201 N.E.2d 425.) The evidence of defendant's guilt under the accountability statute was not "so unsatisfactory as to raise a reasonable doubt of defendant's guilt."

■■■ The defendant next contends that the court erred in allowing the admission of impeachment evidence that had been obtained illegally. The defendant was impeached by some of her statements at the preliminary hearing for Larry Wilson. The defendant maintains that she was in custody at the time, but had not been notified of her rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. We need not reach the merits of defendant's *Miranda* claim. It is clear that illegally obtained evidence may not be used in the prosecution's case in chief. However, prior inconsistent statements obtained in contravention of the *Miranda* requirements may be used to impeach the truthfulness of a witness. *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643.

Defendant next contends that the court erred in allowing, over objection, the presence of the county sheriff at the prosecutor's table, throughout *voir dire* and trial. When the sheriff's presence was objected to by the defendant at *voir dire*, the court overruled the objection, introduced the sheriff to the jurors, and told the jurors that the sheriff was going to be present in order to assist the prosecution. This cause was tried

in a small, rural county, where most of the jurors were acquainted with the sheriff. There is no indication in the record or briefs that the sheriff was in uniform during the trial. The State informs us that the sheriff was not an investigating officer in this case. He did not testify at the defendant's trial.

One of the two prosecution occurrence witnesses, Larry Wilson, was a prisoner in the county jail, and, therefore, in the custody of the sheriff and his staff. The defendant argues that the presence of the sheriff at the prosecution table during the testimony of Larry Wilson had an intimidating effect on Larry. She also argues that the sheriff's presence during Roger Wilson's testimony had an intimidating effect on Roger, who had previously been arrested and released for his role in the burning of the Dose house. In the hearing on post-trial motions, Sheriff Russell Crew testified that Larry Wilson had been released from the county jail some three weeks after the conclusion of Alice Ong's trial. Larry was released 70 days prior to the 180 days of his sentence. Sheriff Crew testified that Larry had received a day off for every full day he had worked as a maintenance man in the county courthouse. Sheriff Crew testified that it was a normal practice to give a prisoner day-for-day credit for days spent working. The defendant failed to elicit any evidence that either Larry or Roger had received promises or threats from the sheriff. Because Larry was in the custody of the sheriff's police at the time of Alice Ong's trial, some member of that force would necessarily have been present in the courtroom while Larry testified. Normally, however, a prisoner-witness' custodian does not sit with the attorney who calls the witness to testify. As we have already stated and shall discuss later in this opinion, the testimony of an accomplice witness is considered suspect and legally weak because of the strong possibility that it was coerced by threats or promises. The overt association of a prisoner-witness' custodian with the prosecution, at the very moment that the prisoner-witness testifies, is inherently intimidating and should be avoided. However, in the absence of a showing by the defendant of actual coercion of the witnesses by the sheriff, we shall not presume that the presence of the sheriff at the prosecution table caused these witnesses to testify falsely.

The defendant further asserts that the presence of the sheriff at the prosecution table had an intimidating effect upon the jurors. After the jury was discharged, the judge told the jurors, "If any of you need any special help in getting home, the Court will be happy to request the Sheriff's staff to give you what assistance you might need." If, during trial, the court had indicated to the jury that it considered the sheriff to be an adjunct of the court, it would have been improper to allow the sheriff to sit at the prosecution table during trial. Such procedure would indicate to

the jury that the court itself was associated with the prosecution, but not the defense, of this cause. Clearly, a court may not place the jury in the charge of the State's Attorney's office. However, there is no indication, either in the record or the briefs, that the jury was ever placed in charge of the sheriff prior to the rendition of the jury's verdict. *Cf. Turner v. Louisiana* (1965), 379 U.S. 466, 13 L. Ed. 2d 424, 85 S. Ct. 546, and cases collected at Annot., 38 A.L.R.3d 1012 *et seq.* (1971).

In a small rural county, such as the one where this cause was tried, the residents, including the jurors, depend upon the sheriff's office for their protection in a much more direct and regular fashion than they depend upon the State's Attorney's office. The presence of the sheriff at the prosecutor's table might indeed have an intimidating effect upon the jury. The sheriff, who was known and, presumably, trusted by many of the jurors, may, as the defendant argues, have served as a "silent witness" for the prosecution, even though he never testified and was not the investigating officer in this case. "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." "Mr. Justice Holmes stated no more than a truism when he observed that 'Any judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere.' *Frank v. Mangum*, 237 U.S. 309, at 349, 59 L. Ed. 969, at 980, 35 S. Ct. 582 (dissenting opinion)." *Turner v. Louisiana* (1965), 379 U.S. 466, 472-73, 13 L. Ed. 2d 424, 429, 85 S. Ct. 546, 549-50.

■■ We conclude that, because of its possible coercive effect upon the witnesses and the jurors, the presence of the sheriff at the prosecution table was improper in this cause. However, in the absence of a showing of actual prejudice, we do not believe the error, in itself, to be of sufficient magnitude to require reversal.

The defendant next contends that she was prejudiced by improper argument on the part of the prosecution. The record shows that the greater part of the prosecution's case, indeed, the crucial testimony in that case, was provided by the two occurrence witnesses, Larry and Roger Wilson. In accordance with established Illinois law, as expressed in IPI Criminal No. 3.17, the jury was instructed: "An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

In his closing argument, counsel for the defendant described the

Wilson brothers as accomplices and informed the jury of the accomplice instruction that they would be given by the court. In rebuttal argument, the prosecutor stated:

"He says it's an accomplice's testimony that Miss Ong was in the house. It's an accomplice's testimony. I don't see any difference between Miss Ong and the Wilsons as far as accomplices. They were all three there. They all three testified in this court."

Defense counsel then interjected:

"Your Honor, I'm going to have to object to that. The defendant can never be charged as an accomplice."

The court replied, "Well, that's what part of this lawsuit is about." Defense counsel repeated his objection, and the court overruled it. The prosecutor then proceeded to call the defendant an accomplice two more times during his argument.

Larry Wilson had already been convicted for arson of the Dose house. He had pleaded guilty to that offense, and, at Alice Ong's trial, admitted that he had set fire to the kitchen curtains. Roger Wilson had been charged with the crime of arson for his part in this incident, but the State dropped the charges against him. Larry Wilson was an accomplice as a matter of law, and it was proper, under the circumstances, for the defense to argue that Roger Wilson was also an accomplice. Prior to closing arguments, the defendant's accomplice instruction had been proposed to the court. The prosecutor offered no objection, and the instruction was approved by the court.

■■ Accomplice testimony is suspect because it may be motivated by promises of or hopes for leniency. (*People v. Crump* (1955), 5 Ill. 2d 251, 255, 125 N.E.2d 615.) The evidence of this case justified the defendant arguing that the Wilson brothers were accomplices. The court had already given its approval to the defendant's accomplice instruction. The court's decision to so instruct the jury was correct. (*People v. Robinson* (1974), 59 Ill. 2d 184, 319 N.E.2d 772.) Had the prosecutor thought the instruction objectionable, he should have voiced his objection to the court prior to the court's approval of the instruction. Instead, the prosecutor attempted to obliterate a valid and approved instruction of the court by arguing that the defendant herself was an accomplice. Such an argument was highly improper. When the term "accomplice" is used inadvertently as a synonym for "accessory" or "aider or abetter," no prejudice necessarily results. Here, however, the prosecutor characterized the defendant as an accomplice, shortly after, and in reference to, the defense counsel's explanation of the accomplice instruction. "An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant." (IPI Criminal No. 3.17 (1968).) "The generally accepted test of whether a witness is an accomplice is whether he himself could have

been indicted for the offense, either as principal or accessory." (*People v. Robinson* (1974), 59 Ill. 2d 184, 190-91, 319 N.E.2d 772.) Obviously, one cannot be an accomplice witness at one's own trial, unless one's testimony also tends to establish the guilt of a co-defendant. The accomplice witness instruction is given as a caution to the jury in weighing evidence which inculpates the accused. The instruction is not applicable to evidence which exculpates.

■■ The record indicates a strong probability that the jury convicted on the basis of accountability. During its deliberations, the jury sent a note to the judge, asking if, in order to convict, it had to find that the defendant had actually set fire to the house. The judge sent back a message stating that the court could not add to the instructions already given. To bring the accused within the purview of the accountability statute (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c)), "it must be established that: he solicited, aided, abetted, agreed or attempted to aid another person in planning or committing an offense; that this participation took place either before or during the commission of the offense; and that the participation was with the concurrent, specific intent to promote or facilitate the commission of the offense. Mere presence at the scene of the crime or negative acquiescence in another's actions is insufficient to make a defendant accountable * * *." (*People v. Cole* (1977), 50 Ill. App. 3d 133, 142, 365 N.E.2d 133.) The prosecutor's attempt to equate accountability as an accessory with status as an accomplice could only have confused the jury to the prejudice of the defendant. The confusion was exacerbated by a statement of the court that:

> "The defendant must be found guilty of the charges of course. As I have told counsel and repeated in this trial here that the jury will be instructed, of course, that the defendant can be convicted if she started the fire or if she was an *accomplice* to the fire. Either way." (Emphasis added.)

The prosecutor made no attempt to correct the confusion of these terms, but specifically equated them later in his argument, when he stated: "That tends to prove more probably than not that she is a party accountable here. She's an accomplice." The court sustained an objection to the words "more probably than not," but made no comment about the equation of "accountable" with "accomplice." Once the jury had been repeatedly informed, by the prosecutor and the court, that one is "accountable" for a crime if one is an "accomplice," the rule of law that "mere presence at the scene of the crime or negative acquiescence in another's action is insufficient to make a defendant accountable" was negated in the minds of the jury. The accomplice instruction informed the jury that "[a]n accomplice witness is one who testified that he was involved in the commission of a crime with the defendant." As we have stated, the prosecutor argued to

the jury that Miss Ong was an accomplice because "[t]hey were all three there" and "[t]hey all three testified in this court." Thus, the jury was informed that Alice Ong's presence at the scene of a crime (to which Larry Wilson had already pleaded guilty) plus her testimony in her own defense, made her an accomplice, and, as an accomplice, she was accountable for the criminal act of Larry Wilson. Such an argument not only misstates the law of accountability, it plays havoc with the presumption of innocence and the right to testify in one's own defense.

The prosecution further compounded the confusion by characterizing Alice Ong and the Wilson brothers as "common drinking buddies," who were like "peas in a pod," and noting that "birds of a feather flock together." The prosecutor also stated that Alice had admitted to going out drinking with the Wilsons both before and after the night of the incident, a statement not supported by the testimony at trial. Guilt by association is a thoroughly discredited concept. (*People v. Marquis* (1974), 24 Ill. App. 3d 653, 663-64, 321 N.E.2d 480.) While these latter remarks about the relationship of Alice and the Wilsons do not, in themselves, rise to the level of reversible error, they, combined with the prosecutor's attempt to define accountability as presence at the scene of a criminal act, worked to further confuse the jury to the prejudice of the defendant.

Under the circumstances of this case, the prosecutor's characterization of defendant as an accomplice alone calls for reversal. The combined effect of the arguments herein discussed and the related remarks by the court denied the defendant a fair trial. Therefore, the judgment of the circuit court is hereby reversed and the cause is remanded for retrial. Because of our disposition of this cause, we need not reach the other issues raised as error by the defendant.

Reversed and remanded.

STOUDER and HEIPLE, JJ., concur.