THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM CAIN, a/k/a Wilbur Cain, Defendant-Appellant.

First District (1st Division)  No. 77-488

Opinion filed February 26, 1979.—Rehearing denied March 14, 1979.

2

John M. Goldberg, of Chicago (John M. Cutrone, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Michael E. Shabat, and Margaret K. Stanton, Assistant State's Attorneys, of counsel), for the People.

*Mr. JUSTICE BUCKLEY delivered the opinion of the court:

The defendant, William Cain, also known as Wilbur Cain, was indicted jointly with Ronald McClellan for murder and armed robbery in connection with the September 12, 1974, slaying of Robert Dietz, a mail carrier. After a jury trial before Judge Frank J. Wilson in the Cook County Circuit Court, McClellan was found guilty of both murder and armed robbery; Cain was found guilty of armed robbery only and was sentenced to a term of from ten to thirty years. It is from this judgment of conviction and sentence that Cain now appeals.

For the reasons stated below, we affirm.

The facts which are pertinent to the issues presented on appeal may be summarized as follows:

The evidence relating to Cain's involvement in the crime charged included the testimony of Robert Haas. Haas testified that Cain had asked on September 12, 1974, to use a car belonging to Haas' step-brother to go to a liquor store. Haas said he agreed to this request on condition that he be allowed to accompany Cain. He said McClellan accompanied them, occupying the front passenger seat while Cain drove and Haas rode in the back. Haas testified that he noticed the barrel of a shotgun under McClellan's seat and that, when he asked about it, McClellan said he intended to rob someone. Haas said he told McClellan he wanted no part of it.

According to Haas, as the car was moving McClellan told Cain to pull over so he could rob a mail carrier. Cain did so, and got out of the car and stood on the sidewalk while McClellan went into a building. Haas heard a shot, McClellan came running out, both McClellan and Cain got into the car, and Cain drove away. Haas testified that he saw McClellan take some bills out of a wallet and throw the wallet away. He then heard Cain ask McClellan why he had shot the mail carrier and heard McClellan answer that it was an accident.

Later, Haas testified, he saw Cain and another person with the shotgun on the front porch of the apartment building where they had spent the previous night, and that he had taken the shotgun from Cain and placed it in a garbage can.

---

*This opinion was prepared by Justice Buckley while assigned to the Illinois Appellate Court, First District.

Haas stated that he had been convicted twice for theft and that, after the incident here in question, he had been placed in protective custody.

Jim E. Price testified that he lived in the same apartment building as Cain at the time of the incident here in question, and that Cain awakened him at about 11 a.m. on September 12, 1974, and stated that he had gone out to get some drinking money and someone got shot. Price said Cain later returned and urged him to go see a shotgun, but that he refused.

Price also testified that Cain had at no time said that he had shot anyone or taken anything from anyone.

Jody Akers, who said she was a close friend of Cain, testified that shortly after 11 a.m. on September 12, 1974, first Cain and then McClellan entered Cain's apartment, McClellan carrying a brown paper sack over his shoulder. She said that, after McClellan left, Cain told her he was in serious trouble, showed her two $10 bills, and said that was all he had gotten. She testified that during that afternoon she took a shotgun from a garbage can and put it in a closet. She also said that later, when she and Cain saw a newscast mentioning the Dietz slaying, Cain told her "that is what they were involved in or maybe it wasn't."

In connection with the presentation of this evidence at trial, three incidents occurred which are also of importance.

The first such incident concerns the following portion of the prosecution's opening remarks:

"(The evidence will show * * *)

PROSECUTOR: That McClellan struck up a conversation, introduced himself as Ronald and said that he lived next door with the Gonzalezes and that was understood and he interpreted that he was, in fact, a Gonzalez, but in any event he introduced himself and began to speak of a stickup.

DEFENDANT MC CLELLAN: This is a lie.

PROSECUTOR: As I say, the only evidence you will hear in this case is the sworn testimony from the witness stand. There, they discussed a stickup. That evening McClellan went out with Cain.

ATTORNEY FOR DEFENDANT CAIN: Judge, I'm going to object to they discussed a stickup.

THE COURT: Proceed with what you expect the evidence to show.

PROSECUTOR: The evidence will show that Cain departed and returned with some money. The important thing is nine-thirty the next morning—

ATTORNEY FOR CAIN: Judge, I will object to that. Could I have a side bar, Judge?

THE COURT: Is this in the motion in limine?

ATTORNEY FOR CAIN: Absolutely.

PROSECUTOR: I am not going to get into that.

THE COURT: You just got into that. The jury will disregard the last statement. It will be stricken from the record."

The incident took place despite prosecution consent to a motion *in limine* to exclude all evidence of prior offenses by the co-defendants.

Second, cross-examination was curtailed when counsel for Cain attempted to impeach Price by first having Price testify that his in-court testimony included everything he had told the police and grand jury, and then showing that he had also told the police that Cain had told him that "that crazy guy" he (Cain) was with had shot someone, and that he had not told the grand jury that Cain told him they had been out to rob anyone. Such impeachment was objected to as involving statements which would be hearsay as to McClellan and because it would amount to impeachment of Price by demonstrating mere omissions. The court refused to permit this line of questioning on the latter ground.

Third, in closing argument the prosecution stated: "Jim Price told you Cain came into that apartment and said we're going out to rob someone for some liquor money and I didn't want anyone to get killed. And if he would have said anything different to the police two years ago, don't you think [defense counsel] would have pointed that out again?"

Defense counsel objected to that statement; the objection was overruled.

On appeal, Cain urges error in the trial court's denial of his motion to sever his case from McClellan's in that the joint trial resulted in prejudicial curtailment of cross-examination; in prejudicial, inflammatory and erroneous statements by the prosecution in opening and closing remarks; and in imposition of an excessive sentence.

■■ Turning first to Cain's claim that failure to sever his trial from that of McClellan resulted in prejudicial curtailment of cross-examination, it becomes apparent that the only instance in which cross-examination was significantly curtailed was that in which defense counsel attempted to impeach Price on the basis of omissions in his testimony. In order to determine whether such curtailment was a prejudicial result of the failure of the trial court to sever Cain's trial from McClellan's, it is necessary to consider separately whether such curtailment was the result of the denial of Cain's motion for severance, and secondly whether the curtailment was prejudicial. Only then is it possible to assess the significance of this curtailment under Cain's major contention that refusal to sever his trial from McClellan's constituted error.

■ As to the curtailment's being a result of the joint trial, the correctness of this contention depends on whether the only basis for barring this impeachment effort was that it would produce testimony which was hearsay as to McClellan. The trial court, however, relied largely on its

assessment that this line of inquiry would not lead to impeachment. Indeed, impeachment by omission is possible only where the fact omitted was of such a character that its inclusion was to be expected and its omission was not to be expected. *People v. Fabian* (1976), 42 Ill. App. 3d 934, 356 N.E.2d 982.

The omissions Cain's counsel sought to reveal, however, were not of this character. Price's failure to mention at trial that Cain told him "that crazy guy" did the shooting or to tell the grand jury that Cain told him that the shooting occurred after they had gone out to rob someone are not significant when considered in context. Neither of these comments is necessary to the overall narrative Price was relating and omission of them from one account is not contradictory of another account in which they were included. On the contrary, such incidental comments were as likely to be included as omitted, absent questioning focused on these points. Price's inclusion of one such comment and omission of the other in successive testimony does not therefore provide a basis for impeachment by omission.

■■ Curtailment of the cross-examination aimed at this impeachment was therefore not the result of the trial court's refusal to sever the co-defendants' trials, but rather was the result of the immateriality and irrelevance of this line of inquiry. Moreover, this curtailment was certainly not prejudicial to Cain, since no impeachment would have been accomplished if cross-examination had been permitted to continue.

■■ In any event, the propriety of a trial court's refusal to sever the trials of co-defendants does not depend directly on whether any prejudice to one co-defendant resulted from a joint trial.

The decision whether to sever such trials rests in the sound discretion of the trial court (*People v. Brooks* (1972), 51 Ill. 2d 156, 166, 281 N.E.2d 326; *People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 119), and joint trials are favored unless the defenses of the co-defendants are so antagonistic that a joint trial would prevent the co-defendants from receiving a fair trial (*People v. Barbaro* (1946), 395 Ill. 264, 69 N.E.2d 692; *People v. Jayne* (1977), 52 Ill. App. 3d 990, 368 N.E.2d 422). A reviewing court will not reverse a trial court decision regarding severance unless the trial court's decision constituted an abuse of discretion (*People v. Connolly* (1965), 33 Ill. 2d 128, 210 N.E.2d 523, *cert. denied* (1966), 384 U.S. 1023, 16 L. Ed. 2d 1027, 86 S. Ct. 1959; *People v. Jayne*).

■■ In the present case Cain and McClellan did not rely on antagonistic defenses. Cain's defense theory was that McClellan was solely responsible for the robbery and shooting of Dietz. McClellan's defense did not attempt to shift responsibility to Cain. There being no antagonism between their defenses, there was no basis for the trial court to sever

Cain's trial from McClellan's. Accordingly, there was no error in denying Cain's motion for severance.

■■ Cain's contention that prosecutorial misconduct deprived him of a fair trial addresses two separate instances. In the latter instance the prosecutor in closing argument, called the jury's attention to the failure of defense counsel to impeach Price's testimony. Cain argues that this was unfair because such impeachment was prevented because it would have produced evidence inadmissible as to McClellan. However, as stated, above, the line of inquiry defense counsel sought to pursue would not have led to impeachment of Price. Accordingly, there was no unfairness in the prosecutor's reference to the failure of the defense to impeach Price.

The other incident, however, in which the prosecutor alluded in the opening statement to a discussion of an unrelated robbery between Cain and McClellan, was of a more serious character, because although vague it could be interpreted as an allegation that the defendants had engaged in a prior robbery.

No further mention of such a crime occurred in the course of the trial. Accordingly, as this court noted in discussion of the same point in McClellan's appeal (*People v. McClellan* (1978), 62 Ill. App. 3d 590, 378 N.E.2d 1221), the reference to the robbery by the prosecutor was a purported recitation of evidence which was never presented and was therefore improper. (*People v. Weller* (1970), 123 Ill. App. 2d 421, 427, 258 N.E.2d 806, 809.) Moreover, because it referred to a matter which could not properly be entered into evidence, it was prejudicial and the sustaining of objections with directions to the jury will not necessarily cure such an error. *People v. Brown* (1972), 3 Ill. App. 3d 1022, 1025, 279 N.E.2d 765, 767.

In any event, even such inflammatory remarks as a reference to an admission of guilt by the defendant to the offense for which he is being tried where no such admission is proved at trial will not require reversal where there is no reasonable ground to believe that the jury's verdict was influenced by these remarks. *People v. Allen* (1959), 17 Ill. 2d 55, 63, 160 N.E.2d 818, 824.

Here, however, the evidence of Cain's guilt was overwhelming. Haas, as an eyewitness, described Cain's participation as driver and lookout in the execution of the robbery. Haas reported that Cain asked McClellan after the incident merely why he had shot the mail carrier, indicating that Cain was surprised only by the shooting and not by the robbery. Price recounted a description by Cain of the robbery and shooting in which he did not deny that he was a full participant in the robbery. Finally, Jody Akers testified that Cain showed her money and

said he had gotten it from a robbery on the day Dietz was shot. None of this testimony was impeached and no evidence was presented which was inconsistent with full participation by Cain in the robbery. Cain's contention that his acquittal on the charge of murder indicated that the evidence was close must be rejected. Under the evidence in this case, Cain's acquittal as to murder and conviction for armed robbery were logically inconsistent because guilt as to each charge depended on the same facts. The verdicts of the jury must be viewed simply as an exercise of the power of leniency. *People v. Murray* (1975), 34 Ill. App. 3d 521, 540 N.E.2d 186.

■■ In view of this overwhelming evidence of guilt the prosecutor's improper opening remarks, though error, were harmless under the circumstances beyond a reasonable doubt.

As for Cain's final argument, that the sentence he received was excessive, we cannot agree with his claim that the trial court was influenced in imposing sentence by the fact that the victim of the armed robbery was murdered. The trial court stated clearly that Cain's acquittal on the charge of murder had removed that matter from consideration.

Cain's insistence that, because of his lack of prior convictions and consistent gainful employment, his sentence of 10 to 30 years could not properly be grounded on his conviction for armed robbery alone must be rejected. Although it is true that Cain's role in the crime was not that of principal and that his prior record was generally favorable, there was ample basis in the record for imposing a sentence greater than the minimum.

■■ The crime in question was perpetrated against a victim chosen at random, who happened to be a postal employee. The weapon employed was a shotgun, a particularly deadly weapon. Because in determining the sentence it is appropriate to consider both the nature of the offense and society's need for protection as well as the defendant's rehabilitative potential (*People v. Dawson* (1975), 33 Ill. App. 3d 768, 338 N.E.2d 425), the wanton nature of Cain's offense was a proper consideration as an aggravating factor. Accordingly, we do not regard the sentence imposed, which was within the limits authorized by section 5—8—1(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(b)(2)) for a Class 1 felony such as armed robbery, as a clear departure from the spirit of the law such as would justify a modification by this court. See *People v. Luckey* (1975), 35 Ill. App. 3d 179, 341 N.E.2d 107 and *People v. Brown* (1973), 15 Ill. App. 3d 205, 303 N.E.2d 465.

For the foregoing reasons, the judgment and sentence of the circuit court are hereby affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.