THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM JACKSON (Impleaded), Defendant-Appellant.

First District (5th Division) No. 80-175

Opinion filed October 9, 1981.

Ralph Ruebner and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth Stern Geis, and Mark R. Fuller, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of armed robbery, acquitted of attempt murder, and sentenced to 11 years. On appeal, he contends that (1) the State failed to prove beyond a reasonable doubt that his conduct was not compelled; (2) prejudicial remarks of the prosecutor denied him a fair trial; and (3) the sentence was excessive.

Hilario Lara testified through an interpreter that two black men approached him as he waited for a bus; that the shorter man grabbed him by the neck, covered part of his face, and put a pistol to his head; that the taller man, whom he identified as defendant, was wearing red pants; that one of the men demanded money; that he heard no talking before money was demanded, although the men said things he did not understand; that he told the men he had no money; that defendant said, "You have a bag" and took it; that the bag contained clothing and a towel; that when a police officer carrying a gun shouted at them, the shorter man fired twice at the officer from behind him (Lara) while defendant stood slightly behind and approximately 2 to 3 feet to his right; that the shorter man and defendant then fled; and that at no time did the shorter man point the gun at defendant.

Victor Reese, a 10-year-old child, testified that he was playing with friends when from approximately 10 feet away he saw two black men robbing a white man; that the shorter man stood behind the victim holding a gun to his head while the taller man, wearing red pants, was in front searching the victim; that he heard no talking and never saw the gun pointed at defendant; that a police officer arrived carrying a gun and said, "Halt. Police"; that the shorter man ordered the officer to drop his gun and, when he refused, the shorter man fired at him; that defendant was standing beside the shorter man at the time; that he (Victor) then ran home, where he saw defendant at the back door holding a brown paper

bag; that defendant asked Victor's mother for short pants "due to the heat"; that defendant then entered the apartment, put the bag on a couch, and went into the bedroom of Victor's 3-year-old sister and told her to cover him with clothes; and that defendant was arrested a few minutes later.

Officer McHugh testified that he saw a man wearing red pants, whom he identified as defendant, holding a bag while searching a white man; that this man was in front of and facing the victim, and a shorter black man was behind him; that he left his car and, with his gun drawn, came within five feet of the men and shouted, "Police. Put your hands up"; that the shorter man got behind the victim, ordered McHugh to drop his gun, and fired twice as McHugh ran back to his car; that the gun held by the shorter man was never pointed at defendant; that both assailants fled, with defendant following the shorter man and carrying the bag; and that he and another officer found defendant hiding under a pile of clothes in the apartment of Dorothy Reese, the mother of Victor.

Officer Opiola testified that he heard three gunshots and then observed McHugh in the street, a Latin man on the sidewalk, and two black men running south; that the taller of the two was wearing red pants and carrying a brown bag; that he and McHugh were directed by Mrs. Reese to her house, where they found defendant hiding under a pile of clothes in the bedroom of a 3-year-old girl; and that a bag of clothes was also found on a couch in the front room.

Defendant testified that while he was drinking in a bar, Ollie Williams approached him and said he needed money; that defendant offered him a job; that he and Williams had been members of the Vice Lords street gang in 1965, but he (defendant) was no longer involved with the gang; that Williams said, "[O]nce a Vice Lord, always a Vice Lord" and told him they were going to get some money; that Williams showed him a gun and said he heard that defendant had been shot in 1976 for disobeying gang orders; that he was afraid of Williams because he was a gang chief and because of his prior trouble with the gang; that he had been whipped and struck in the head with a pipe in 1968 or 1969 for refusing to obey gang orders; that in 1976, after the Vice Lords had sent word from prison to punish defendant for disobeying orders, he was shot in the back underneath the right arm; that he went with Williams because he feared he or his family would be harmed; that Williams ordered him to go in front of a man they saw standing on a corner; that Williams told him to search the man and take his bag; that he searched the victim because Williams could not do it and still hold the gun; that he did not attempt to flee, because he feared Williams would shoot him; that when McHugh interrupted the robbery, he (defendant) moved closer to the victim and Williams; that he ran with the bag when he heard the gunshots because he

was frightened, and since he was on parole he thought the police would not believe his story; that he entered the Reese home but did not tell the Reese girl to cover him with clothes; and that when he was first questioned about the robbery, he lied about the identity of the other man involved for fear the gang would kill him if he gave Williams' name.

Defendant admitted that he did not tell the police of his fears, of the gang problem, or the version of the robbery that he testified to at trial. He also admitted, but later denied, that after his arrest he told an Assistant State's Attorney he was standing outside the bar talking to a girl before walking over to Williams, whom he saw robbing someone.

The jury was polled on its initial verdict of not guilty of attempt murder and guilty of armed robbery, and when one juror dissented, they were sent back for further deliberation. Thereafter, they returned the guilty verdict on the armed robbery charge.

OPINION

Defendant presents, as his principal contention, the State's failure to prove beyond a reasonable doubt that his conduct was not compelled. He maintains that he reasonably believed Ollie Williams would shoot him if he did not participate in the armed robbery and that, based on his prior experience in the Vice Lords gang, this threat would be carried out.

■■ Section 7—11(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 7—11(a)) provides:

> "A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct."

Compulsion is an affirmative defense (Ill. Rev. Stat. 1979, ch. 38, par. 7—14), so that if some evidence is presented thereon, the State has the burden of disproving it as well as each element of the crime beyond a reasonable doubt (Ill. Rev. Stat. 1979, ch. 38, par. 3—2). Moreover, as stated in *People v. Byer* (1979), 75 Ill. App. 3d 658, 672, 394 N.E.2d 632, 642:

> "The defense of compulsion is a question of fact which the trier of fact must resolve. [Citation.] The trier of fact * * * must determine the credibility of witnesses and weigh their testimony. This determination is a matter peculiarly within the province of the jury and a reviewing court will not substitute its judgment unless the proof is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt."

There is no dispute that defendant presented "some evidence" so as

to raise the issue of compulsion. (See *People v. Unger* (1977), 66 Ill. 2d 333, 362 N.E.2d 319.) He testified that he was told by Williams to help him get money and, when he refused, Williams reminded him of their prior gang association and warned him that such ties could never be broken without retribution. When defendant said that he was not involved in such activities, Williams showed him a gun and mentioned that he heard defendant had been shot in 1976 for refusing to follow a gang order. Defendant further testified to being beaten by gang members on another occasion for a similar refusal; that he did not attempt to extricate himself from the robbery, even after the police arrived, for fear Williams would shoot him; and that he lied about Williams' identity for fear of gang revenge. Also see *People v. Robinson* (1976), 41 Ill. App. 3d 526, 354 N.E.2d 117.

There was, however, contrary evidence supporting the opposite conclusion. Lara testified that defendant noticed his bag of clothing and took it; that defendant moved slightly behind and to the right of him (Lara) when confronted by McHugh; and that the gun held by the shorter man was never pointed at defendant. Victor Reese testified that defendant searched Lara while his partner held a gun to Lara's head; that he heard no talking during the incident and never saw the gun pointed at defendant; and that defendant remained standing beside Lara when gunfire was exchanged. McHugh also testified that defendant searched Lara while holding a bag; that the gun was never pointed at defendant; and that, when the men fled, defendant was following the gunman and carrying the bag. Absent from the testimony is any indication that the threat against defendant would soon thereafter have been carried out had he failed to follow Williams' orders.

■■ The compulsion defense does not apply to criminal acts under which the threat of death or great bodily harm is not imminent. (See *People v. Ricker* (1970), 45 Ill. 2d 562, 262 N.E.2d 456; *People v. Colone* (1978), 56 Ill. App. 3d 1018, 372 N.E.2d 871; *People v. Davis* (1974), 16 Ill. App. 3d 846, 306 N.E.2d 897; also see Ill. Ann. Stat., ch. 38, par. 7—11, Committee Comments—1961, at 432 (Smith-Hurd (1972).) At most, there appears to have been a threat of future injury, and such threat "is not sufficient to excuse criminal conduct." *Robinson*, 41 Ill. App. 3d 526, 529, 354 N.E.2d at 120.

We note, in addition, several latent contradictions in defendant's account of the incident. He testified that he searched the victim on Williams' orders, but he also stated that he did so because Williams could not hold the gun and search the victim at the same time. Furthermore, defendant's testimony of moving closer to the victim and Williams when confronted by McHugh appears to us to be inconsistent with the assertion that he was compelled, for doing so suggests his belief that Williams

would protect him while he used Lara as a shield against any shot fired by McHugh. Defendant also gave an account of his story at trial which differed significantly from the story he told the police and the Assistant State's Attorney shortly after his arrest, and he initially did not tell the police that Williams was a Vice Lord or that he (defendant) was afraid of him. Moreover, defendant's statement that he ran because he was on parole and believed the police would not accept his story does not explain why he moved closer to Lara and Williams when McHugh appeared or why he carried Lara's bag with him when he fled. "Evidence of flight is admissible as a circumstance tending to show consciousness of guilt" (*People v. Harris* (1972), 52 Ill. 2d 558, 561, 288 N.E.2d 385, 387), and defendant's testimony that he fled for other reasons presented a question of his credibility which was for the jury to determine. Similarly, while Lara may not have understood all that was said during the robbery, that fact too only affected the credibility of his testimony.

■■ Additionally, we note significant factual parallels between the present case and *People v. Johnson* (1976), 42 Ill. App. 3d 194, 355 N.E.2d 577, where the court held that the jury properly rejected the defense of compulsion in finding the defendant guilty of armed robbery. In *Johnson*, both victims stated that neither robber spoke to the other and that no order was issued to defendant, who searched one of the victims and removed his valuables and also took his wristwatch. Defendant then spontaneously asked the other victim for money, and when she gave it to him, he asked if she had more. Also, after the robbery, defendant ordered the victims to move to another location and lie down. When defendant was apprehended, he said nothing about being coerced but rather that he and his partner were taking a shortcut to a party. Similarly, in the case before us, Lara testified that he heard no conversation before the robbery and, although he stated that things could have been said during the robbery, such statement only affected the weight of his testimony. Moreover, the two assailants fled, and defendant also fabricated the events he related both to Mrs. Reese and initially to the police and Assistant State's Attorney. Therefore, in light of the facts presented herein, we cannot say the evidence that defendant was not compelled was so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt of guilt.

■■ Defendant also makes reference to various comments by the State during opening statement and closing argument, contending these were not based on the evidence and were inflammatory. Having examined each of these statements and the law applicable thereto, we have determined that they were either based on the evidence, were reasonable inferences therefrom, or were proper responses to remarks of defendant. In view of the evidence otherwise presented, we find no prejudicial error in the State's comments.

Finally, we turn to defendant's contention that the sentence was excessive, as the trial court failed to take his rehabilitative potential into account. We disagree.

Although a reviewing court is empowered to reduce sentences under Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(4)), it must bear in mind that a trial court is in a superior position during trial and sentencing to observe the accused and determine the appropriate sentence (*People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330), and its decision should be given "great deference and weight," as it is in a "better position to determine a sentence than that which a cold record affords a reviewing court." (*People v. Baker* (1979), 72 Ill. App. 3d 682, 689, 391 N.E.2d 91, 96.) Moreover, as stated in *People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541, 545, the "standard of review of a sentence claimed to be excessive is whether in fact the trial court exercised its discretion and, if so, whether this discretion was abused."

■■ The 11-year sentence here was within the permissible range of not less than 6 nor more than 30 years for the offense of armed robbery. (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2(b), 1005—8—1(a)(3).) In determining the sentence, the trial court stated that defendant's guilt was firmly established and that other significant factors weighed heavily against him. The court emphasized that defendant had been imprisoned for two robbery convictions in 1973; that a gun was discharged during the commission of the instant crime, which endangered children nearby; that by entering a home and hiding in a child's bedroom, he could have caused physical and emotional danger to that child; and that defendant was over 30 years of age. Implicit in the court's reasoning was the consideration of defendant's rehabilitative potential. Although defendant was married, had three children, and worked with his father—all of which were brought to the court's attention—it seems clear that the court rejected those factors and found them to be outweighed by his culpability and the circumstances of the offense. We believe, therefore, that the trial court conscientiously assessed the gravity of the offense, the interests of society, and defendant's rehabilitative potential (see *People v. Cain* (1979), 70 Ill. App. 3d 1, 388 N.E.2d 54), and we do not regard the sentence imposed as an abuse of discretion.

The conviction and the sentence are affirmed.

LORENZ and WILSON, JJ., concur.