THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRY SANDERS, Defendant-Appellant.
First District (2nd Division)   No. 86—2339

Opinion filed March 22, 1988.

Jenner & Block, of Chicago (David C. Bohan and Patricia M. Logue, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry and Paula Carstensen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant appeals from his conviction and sentence after a jury trial on one count of murder (Ill. Rev. Stat., 1983 Supp., ch. 38, par. 9—1), two counts of attempt to commit murder (Ill. Rev. Stat. 1983, ch. 38, par. 8—4), and two counts of armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2). During the crimes, which occurred in the apartment of the manager of the store at which defendant worked, the manager was killed and two of his visiting friends were injured. Defendant and a codefendant were tried by separate juries in a joint trial, and defendant was found not guilty on a third count of armed robbery. Defendant was sentenced to serve consecutive prison terms of 40 years for murder and 30 years for each attempted-murder count.

His codefendant was also convicted of murder, attempted murder, and armed robbery and was sentenced to death; the codefendant's appeal was filed on February 8, 1988, in the Illinois Supreme Court as *People v. Johnson*, No. 66545.

Defendant's trial theory was that he was forced by the codefendant and an unapprehended third man into participating in the crimes.

The issues on appeal are:

(1) Whether the State's evidence and closing argument improperly dwelt on the murder victim's survivors.

(2) Whether the State's closing argument misstated the law of accountability and compulsion, thus denying defendant a fair trial.

(3) Whether the trial court improperly instructed the jury on accountability.

(4) Whether the trial court improperly denied defendant's proposed instructions on lesser included offenses of involuntary manslaughter, aggravated battery, and battery.

(5) Whether the trial court improperly failed to direct a verdict of acquittal on one attempted-murder count for want of adequate proof of intent to kill.

(6) Whether the State disproved beyond a reasonable doubt defendant's affirmative defense of compulsion.

(7) Whether alleged misconduct by the State and alleged errors by the trial court cumulatively denied defendant a fair trial.

(8) Whether the trial court abused its discretion in sentencing defendant to consecutive prison terms totaling 100 years.

### FACTS

On the evening of January 20, 1985, defendant and two companions, Andrew Johnson and a man whom defendant later named at trial as Mike Hill (but both of whom were introduced at the time under other names), visited the apartment of William Feuling (Feuling), who managed the store where defendant was employed. There they found Feuling and two of his friends, Arthur Kozak and Brian Walkowiak, who were watching television and not expecting visitors. After some conversation, drinking, and sharing of marijuana, defendant's two companions produced guns and announced a robbery. Kozak testified that during the conversation, defendant and Feuling had discussed the discharge of defendant's sister from her job at the store.

While Johnson and Hill brandished their guns, defendant tied the victims up, gagged them, and removed money from their persons at Johnson's direction. After Feuling said he had no more money or guns in the apartment, Johnson hit him with the gun, repeatedly stabbed him with a kitchen knife, and slit his neck while defendant and Hill watched. Johnson then told defendant and Hill that they now all had to kill one, whereupon defendant took the knife from Johnson, first stabbing at Kozak's stomach and then cutting him on the head. Defendant also hit Kozak in his head with a hammer, at which time the hammerhead flew off. As Johnson urged defendant to "pop" Kozak, Walkowiak suddenly charged at the assailants and then ran from the room. Defendant then struck Walkowiak with a fireplace tool, and

all three assailants ran from the apartment behind Walkowiak. During this time, Johnson shot Walkowiak in the shoulder, but Walkowiak escaped, and the assailants fled the scene. Though bound and wounded, Kozak then managed to telephone the police.

At trial, defendant presented evidence that he had visited the apartment at Feuling's invitation and that as of then he did not know that his sister had been fired. Defendant testified that Hill had previously shot and wounded him and later had shot through his coat, as well as having participated in beating him on yet another occasion. According to defendant, he encountered Hill and Johnson while waiting to board a bus to Feuling's apartment, and they followed him onto two buses and rode with him all the way to the apartment after asking him whether Feuling would mind if they came over.

Defendant testified that he tied up the victims out of fear for his own life. Defendant said that Johnson and Hill verbally abused him during this time, although State witnesses denied this. Defendant said that when Feuling was stabbed, he yelled for defendant to help him, and defendant picked up the gun that Johnson had laid down and tried to fire it but succeeded only in causing it to discharge at the floor. After this, he said, he falsely told Johnson the gun had fired by accident. Defendant said that he then responded to Johnson's order to kill Kozak by poking Kozak lightly in the stomach with the knife and that he still feared for his life. Defendant denied that he was trying to kill Kozak and said he was only pretending. Defendant said he then responded to a command to cut Kozak's throat by picking up a hammer and hitting him lightly with it. Defendant said the hammerhead came off because the hammer was weak. In response to a further order by Johnson and in fear for his life, defendant said, he then gently applied the knife to Kozak's neck. Defendant testified that when he approached Walkowiak at Johnson's order to kill Walkowiak with the knife, Walkowiak jumped up and began yelling, whereupon defendant followed an order to kill Walkowiak by hitting him with the fireplace tool on the arm.

Defendant said he ran from the apartment with the others, tried to telephone the police and flag down a squad car, and finally reported the events by telephone to Feuling's brother and then in person to some police officers in a restaurant. Upon returning to the apartment with police, he was arrested after Kozak accused him of being one of the assailants. Johnson was arrested later; the third assailant was not apprehended.

300

OPINION

I. REFERENCES TO SURVIVING FAMILY

Defendant's first contention as to inflammatory and prejudicial conduct by the State is that in testimony and argument, over defendant's objections, the State improperly dwelt on Feuling's survivors. The State replies that testimony referring to the survivors was incidental to other relevant evidence and was not inflammatory, that the prosecution's closing argument was properly based on the evidence or was invited reply to improper defense argument, that defendant largely failed to raise pertinent objections at trial, and that two of three objections made by codefendant Johnson to such testimony were sustained in the jury's presence.

■ Suggestions that a jury consider the victim's family as a material factor in its deliberations are improper and prejudicial, as is argument intimating that the victim's family deserves the jurors' sympathy. *People v. Faysom* (1985), 131 Ill. App. 3d 517, 522, 475 N.E.2d 945, 950, *appeal denied* (1985), 108 Ill. 2d 575.

However, every mention of a deceased's family does not *per se* entitle the defendant to a new trial. (*People v. Hope* (1986), 116 Ill. 2d 265, 276, 508 N.E.2d 202, 206-07; *People v. Bartall* (1983), 98 Ill. 2d 294, 322, 456 N.E.2d 59, 73.) Depending on how it is introduced, such a statement can be harmless, particularly when the death penalty is not imposed and the jury does not fix the punishment. (*Hope*, 116 Ill. 2d at 276, 508 N.E.2d at 207; *People v. Kurena* (1980), 87 Ill. App. 3d 771, 777, 410 N.E.2d 277, 283, *appeal denied* (1981), 82 Ill. 2d 586.) Improper remarks generally do not constitute reversible error unless they result in substantial prejudice, and, where evidence against a defendant was overwhelming, remarks concerning a victim's family have been held not to be so prejudicial as to deny a fair trial. *People v. Villa* (1981), 93 Ill. App. 3d 196, 203, 416 N.E.2d 1226, 1232; *People v. Vasquez* (1969), 118 Ill. App. 2d 66, 74-75, 254 N.E.2d 617, 621, *appeal denied* (1970), 42 Ill. 2d 587.

■ As in *People v. Piscotti* (1985), 136 Ill. App. 3d 420, 442, 483 N.E.2d 363, 379, the State's references in closing argument to surviving family members were in response to defendant's theory that Feuling family members were conspiring to convict him. We do not approve these or other aspects of the State's closing argument, as we shall explain later, but the references in the case at bar were not as melodramatic or as baldly calculated as those condemned in *People v. Faysom* (1985), 131 Ill. App. 3d 517, 475 N.E.2d 945, *appeal denied* (1985), 108 Ill. 2d 575, where the prosecutor said that the victim's

family would be thinking about the tragedy through endless sleepless nights and days, then told the jury further that the thoughts of trial participants would be like a few drops in Lake Michigan when compared to the grief of the surviving family. (*Faysom*, 131 Ill. App. 3d at 522, 475 N.E.2d at 950.) The final argument here did not dwell upon survivors' tender ages or contain significantly inflammatory language. (See *People v. Jordan* (1967), 38 Ill. 2d 83, 92, 230 N.E.2d 161, 166.) Hence, we find that the testimony and argument regarding Feuling's survivors, though improper, was not presented in such a way as to make the jury feel it was material to guilt and did not prejudice defendant so as to deprive him of a fair trial.

## II. CLOSING ARGUMENT AND APPLICABLE LAW

■ Defendant next contends that in closing argument the State misled the jury as to the law of accountability and compulsion, thus enhancing the allegedly prejudicial effect of references to the Feuling family and denying defendant a fair trial.

Initially, we note that defendant neither made objection to such argument at trial nor raised the issue with any specificity in his motion for a new trial. Therefore, unless the alleged prosecutorial misconduct rises to the level of plain error (107 Ill. 2d R. 615(a)), it need not be considered. Nevertheless, we have examined the record in the light of defendant's contention.

■ At the outset of his closing argument on the question of accountability, the prosecutor quoted the appropriate pattern instruction virtually *verbatim* and then elaborated on it. Later (but not in rebuttal, as defendant mistakenly asserts), the State attempted to counter what it asserted was defendant's claim of heroism by arguing that if defendant were a hero, had not argued with Feuling or brought Johnson and Hill to his apartment, or even had run for help, Feuling would still be alive. It is obvious from the record that in these latter references, the State was challenging defendant's credibility and motives, not seeking to establish his accountability, and was thus properly commenting on the evidence. Credibility of a witness is a proper subject for closing argument. *People v. Wallace* (1981), 100 Ill. App. 3d 424, 432, 426 N.E.2d 1017, 1024, *appeal denied* (1982), 88 Ill. 2d 554.

As for the earlier part of the State's closing argument, overall it correctly reflected the law of accountability, under which one is accountable for the acts of another if they are performed in furtherance of a common criminal design, *e.g.*, to commit intimidation, battery, robbery, or murder. (See *People v. Terry* (1984), 99 Ill. 2d 508, 514,

460 N.E.2d 746, 749.) As such, it constituted a factual argument framed around the jury instructions. (See *People v. Grayson* (1980), 89 Ill. App. 3d 766, 773, 411 N.E.2d 1177, 1182, *appeal denied* (1981), 82 Ill. 2d 586.) Though defendant cites *People v. Ong* (1981), 94 Ill. App. 3d 780, 419 N.E.2d 97, for the proposition that reversal is required if the State lowers the burden of proof for accountability by misinterpreting a jury instruction, *Ong* is easily distinguishable because of the repeated confusion there of accomplice with accountable status, to which confusion the court itself contributed and which caused the defendant who testified to be erroneously characterized as an accomplice whose testimony was suspect. (*Ong*, 94 Ill. App. 3d at 789-90, 419 N.E.2d at 104.) Accordingly, we do not believe that the State's closing argument here misled the jury as to the law of accountability.

■ Defendant also argues that the State's rebuttal argument distorted the law of compulsion by implying that defendant had had an obligation to save Feuling's life even at the cost of his own, just as the State alleged that Feuling's brother would have done. The State replies that the argument was directed to whether defendant's conduct on the night in question was reasonable, contending that defendant's explanation of the events was unreasonable because if he had been Feuling's best friend he would have done something to help him and that the other victims testified that defendant was never threatened or coerced. The State cites *People v. Colone* (1978), 56 Ill. App. 3d 1018, 1021, 372 N.E.2d 871, 873, *appeal denied* (1978), 71 Ill. 2d 603, as establishing that the reasonableness of a defendant's beliefs and actions are relevant to evaluating the compulsion defense. We do not believe that the State's closing argument distorted the law of compulsion as defendant contends.

### III. ACCOUNTABILITY INSTRUCTION

■ Defendant next contends that the court's instruction on accountability did not adequately incorporate the "common-design rule" and thus greatly prejudiced him by leading the jury to believe that he could be convicted merely for bringing Johnson and Hill to the Feuling home to smoke marijuana or to perform any other unlawful but unrelated act. The common-design rule has been stated as follows: "[W]here two or more persons engage in a common criminal design or agreement, any acts in the furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts ***." *People v. Kessler* (1974), 57 Ill. 2d 493, 496-97, 315

N.E.2d 29, 32, *cert. denied* (1974), 419 U.S. 1054, 42 L. Ed. 2d 650, 95 S. Ct. 635, quoted in *People v. Terry* (1984), 99 Ill. 2d 508, 514, 460 N.E.2d 746, 749.

Over defendant's objection, the jury was instructed on accountability as follows:

> "A person is legally responsible for the conduct of another when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of *a crime*, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of *a crime*." (Emphasis added.)

At the time of trial, the current approved pattern instruction was Illinois Pattern Jury Instructions, Criminal, No. 5.03 (2d ed. 1981), which in substance would have replaced the first emphasized "a" with "that" and the second with "the." However, the instruction given was virtually identical to the instruction that was approved in *People v. Terry* (1984), 99 Ill. 2d 508, 512-15, 460 N.E.2d 746, 748-49, despite the latter instruction's departure from the previous 1968 pattern and the fact that at the time of trial in *Terry* the 1981 pattern had already been prepared. In *Terry*, the supreme court noted that the accountability statute, section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c)), had been construed to incorporate the common-design rule; stated that the instruction given there included the elements of accountability as set forth in the statute; and held that the jury therefore had been accurately instructed on the law. *Terry*, 99 Ill. 2d at 514-15, 460 N.E.2d at 749.

Supreme Court Rule 451(a) requires the current pattern instruction to be used whenever available for a given subject, unless the facts of a particular case make it inadequate. (107 Ill. 2d R. 451(a); *People v. Mitchell* (1984), 129 Ill. App. 3d 189, 199, 472 N.E.2d 114, 121.) However, the decision whether to give a tendered nonpattern instruction is always within the trial court's discretion. (*Mitchell*, 129 Ill. App. 3d at 200, 472 N.E.2d at 121.) And, as the State argues, the challenged instruction in the case at bar was a virtual copy of the one approved in *Terry*, a fact that strongly favors the correctness of the trial court's decision to give it.

Against defendant's contention that the instruction would have allowed the jury to convict him of murder merely because he, Johnson, and Hill had agreed to commit a marijuana offense, even if he were compelled to act out of fear for his life, the State argues correctly that instructions must be read as a whole (*Terry*, 99 Ill. 2d at 516, 460 N.E.2d at 750) and that a compulsion instruction was given.

Hence, even if the jury perceived an option to derive murder accountability from a marijuana offense, its acceptance of defendant's compulsion defense would defeat such accountability as to compelled acts. Moreover, to reach the conclusion hypothesized by defendant, a jury would have to find that the violent acts here were in furtherance of the marijuana offense, which no reasonable jury would have concluded in view of the unchallenged evidence that the marijuana was made freely available and mutually used without impediment.

The fact that defendant knowingly participated in a course of criminally dangerous or homicidal conduct is undisputed. The dispute is over whether he was compelled to do so; if he was not, there was ample evidence on which the jury could have concluded beyond a reasonable doubt that by his doing so he became accountable for the consequences. Hence, we find that defendant was not prejudiced by any arguable error in the accountability instruction.

## IV. LESSER OFFENSES

■ Defendant next contends that instructions on involuntary manslaughter, aggravated battery, and battery should have been given so that he might have had the full benefit of the reasonable-doubt standard by allowing the jury an option in addition to outright acquittal or conviction of the more serious offenses charged.

However, to convict of involuntary manslaughter would have required a finding of recklessness. And, as evidenced by the very words of the statute, the reckless acts themselves must be the legal cause of death. (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a); see *People v. Weeks* (1983), 115 Ill. App. 3d 524, 527-29, 450 N.E.2d 1351, 1353-54; see generally Comment, *The Use of the Tort Liability Concept of Proximate Cause in Cases of Criminal Homicide*, 56 Nw. U.L. Rev. 791 (1962).) Although recklessness is a question of fact to be decided under all the circumstances as presented to the jury (*People v. Robinson* (1987), 163 Ill. App. 3d 754, 779, *appeal denied* (1988), 119 Ill. 2d 570), in the present case there was no evidence whatever of defendant's recklessness apart from the impermissibly tenuous theory that his bus journey itself was susceptible of a recklessness finding because Johnson and Hill were accompanying him. All his acts causing harm at the murder scene were obviously intentional and part of a lethal criminal enterprise, whether or not they were compelled; that is the necessary implication of his compulsion defense. Thus, we hold that the trial court properly refused an instruction on involuntary manslaughter.

Defendant also contends that battery and aggravated-battery in-

structions should have been given, on the ground that the jury could have found him guilty of either of the former offenses rather than attempted murder or armed robbery by use of the same evidence (except as to his mental state) that underlay his conviction of the latter offenses. (See Ill. Rev. Stat. 1983, ch. 38, pars. 2—9, 12—3, 12—4.) Defendant argues that state-of-mind evidence was disputed, and indeed there was dispute as to the gravity of the wounds he inflicted on Kozak and Walkowiak, which defendant contends were purposely minor.

In a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifies it, is entitled to an instruction which would permit a finding of guilt of the lesser offense. (*People v. Cramer* (1981), 85 Ill. 2d 92, 97, 421 N.E.2d 189, 191.) Nevertheless, in addition, our supreme court has held that an included-offense instruction is required only when the jury could rationally find the defendant guilty of the lesser but not guilty of the greater offense. (*People v. Perez* (1985), 108 Ill. 2d 70, 81, 483 N.E.2d 250, 255, citing *Hopper v. Evans* (1982), 456 U.S. 605, 612-13, 72 L. Ed. 2d 367, 373-74, 102 S. Ct. 2049, 2053-54.) As in *Perez*, the present defendant could have been found guilty or not guilty of the greater offenses only, because of evidence both of direct responsibility and (at least in the attempted murder of Walkowiak and the armed robbery of both Kozak and Walkowiak) of accountability therefor. He was either guilty of the more serious charges or, because of his compulsion defense, not guilty at all.

Even as to the attempted murder of Kozak, there is an alternative reason that included-offense instructions should not have been given, regardless of the arguable theory that accountability principles did not apply to that charge (since only defendant attacked Kozak) and that the jury might have found a lack of personal intent on defendant's part to kill: Despite the actual harm proved at trial, it is possible in principle to commit attempted murder without causing bodily harm to a victim, and the indictment of defendant for attempted murder here does not charge bodily harm; thus, our supreme court's previous rejection of the "inherent relationship" test for ascertaining included offenses does not allow us to regard battery or aggravated battery as an offense included in the more serious crime of attempted murder under the indictment in this case. (See *People v. Dace* (1984), 104 Ill. 2d 96, 102, 470 N.E.2d 993, 996; *People v. Mays* (1982), 91 Ill. 2d 251, 258, 437 N.E.2d 633, 635.) Though accountability principles make it unnecessary to educe a similar conclusion in regard to the other attempted murder and the armed robberies of which

defendant was convicted, such a conclusion could be drawn as to battery and aggravated-battery instructions on those charges as well.

Accordingly, we hold that the trial court did not err in refusing to instruct on battery or aggravated battery.

## V. PROOF OF INTENT FOR ATTEMPTED MURDER

■ Defendant next contends that the trial court erred by failing to direct defendant's acquittal of the attempted murder of Kozak because of evidence that Kozak's injuries were superficial.

Defendant also cites *People v. Heflin* (1978), 71 Ill. 2d 525, 543, 376 N.E.2d 1367, 1375, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848, for the proposition that Johnson and Hill's directives to kill Kozak could not provide the intent to kill allegedly required to find defendant guilty by accountability; however, the *Heflin* citation is inapposite, since the holding there was that mere psychological pressure applied by a putative abettor upon a murderer was insufficient to make the abettor accountable unless he abetted her while himself possessing the intent to commit murder. *Heflin* might have been cited by Johnson in an attempt to bolster his case, but it avails defendant not at all. Here, the jury did not need to rely on accountability in order to find defendant guilty of the attempted murder of Kozak; it had ample evidence, if believed, on which to find him guilty of direct responsibility.

It is the jury's function to determine whether the burden of proof beyond a reasonable doubt has been met, and a reviewing court will not substitute its judgment for the jury's on questions involving the weight of the evidence or the credibility of witnesses but will reverse only if the evidence is so improbable, impossible, or unsatisfactory as to raise a reasonable doubt as to guilt. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 826, 447 N.E.2d 1029, 1037, *appeal denied* (1983), 96 Ill. 2d 549.) None of the cases cited by defendant as having found insufficient evidence of intent to kill is comparable to the present one. In four, there was sufficient evidence of intent. (*People v. Myers* (1981), 85 Ill. 2d 281, 289, 426 N.E.2d 535, 539 (cuttings of a victim's throat were interrupted, yet sufficient evidence found of intent to kill); *People v. Winters* (1986), 151 Ill. App. 3d 402, 406, 502 N.E.2d 841, 843; *People v. Howard* (1979), 78 Ill. App. 3d 858, 861, 397 N.E.2d 877, 880, *appeal denied* (1980), 79 Ill. 2d 627; *People v. Burdine* (1978), 57 Ill. App. 3d 677, 685, 373 N.E.2d 694, 701 (defendant alleged effort not to kill).) In *Thomas*, the defendant was uninterrupted and had ample opportunity to complete any murder but failed to do so. (*People v. Thomas* (1970), 127 Ill. App. 2d 444, 455-56, 262

N.E.2d 495, 501.) In *Mitchell*, intent was unproved because the defendant had ample opportunity to complete killing her child but instead applied palliative measures. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 9, 473 N.E.2d 1270, 1274, *cert. denied* (1985), 470 U.S. 1089, 85 L. Ed. 2d 153, 105 S. Ct. 1857.) By contrast, in the present case, defendant and his companions were interrupted by Walkowiak's charge, and rather than make amends, they fled. While the evidence is perhaps not as overwhelming as the State contends, we find in the present case that it was reasonable for the jury to have found sufficient evidence of defendant's intent to kill Kozak.

## VI. DISPROOF OF COMPULSION

■ Defendant next contends that the State did not disprove defendant's affirmative defense of compulsion beyond a reasonable doubt because of evidence that defendant acted under orders and out of fear for his life and because of the alleged inconsistency and improbability of testimony that defendant acted on his own at times. The State responds by citing the very testimony termed insufficient by defendant and by detailing why defendant's own testimony was allegedly incredible.

The defense of compulsion is a question of fact for the jury to resolve. (*People v. Jackson* (1981), 100 Ill. App. 3d 1064, 1067, 427 N.E.2d 994, 996, *appeal denied* (1982), 88 Ill. 2d 553.) The trier of fact must determine the credibility of witnesses and weigh their testimony, which it is peculiarly within the jury's province to do, and a reviewing court will not substitute its judgment unless the proof is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of defendant's guilt. (*Jackson*, 100 Ill. App. 3d at 1067, 427 N.E.2d at 996.) As in *Jackson* (100 Ill. App. 3d at 1069, 427 N.E.2d at 998), after a review of the record, we cannot say that the evidence against compulsion was so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt of guilt.

## VII. CUMULATIVE EFFECT OF ALLEGED ERRORS ON FAIR TRIAL

■ Besides alleged errors already discussed, defendant contends that other alleged errors combined with them to deny him a fair trial even if each one standing alone would not justify reversal. (See *People v. Starks* (1983), 116 Ill. App. 3d 384, 389, 395-96, 451 N.E.2d 1298, 1302, 1306, *appeal denied* (1983), 96 Ill. 2d 548.) The State responds that most of these issues were waived by failure to object at trial and that all contested statements were proper or did not prejudice defendant.

Waiver aside, defendant's contention that the State disparaged his counsel by accusing him of changing evidence is without merit; the State merely said of photographic evidence of the hammer that "[t]hat is something Mr. Sanders and his lawyer can't change. This handle broke." References to defense theories as "garbage" and "cute," though not commendable in their starkness, cannot be said to have prejudiced defendant substantially (see *People v. Baptist* (1979), 76 Ill. 2d 19, 28-29, 389 N.E.2d 1200, 1205)—particularly since they were based on the evidence and followed repeated accusations by defense counsel that prosecution witnesses had changed their testimony to assure a conviction and a suggestion that prosecution witnesses had planted evidence. See *People v. Braxton* (1980), 81 Ill. App. 3d 808, 818, 401 N.E.2d 1062, 1069, *appeal denied* (1980), 81 Ill. 2d 584.

Though defendant contends that the State implied that his counsel had rehearsed testimony and encouraged evasiveness, the State merely commented on how defendant "understood his lawyer's questions beautifully" but "had a hard time understanding me." That fell short of accusing defense counsel of rehearsal or encouraging evasiveness but was merely a proper comment on defendant's credibility. (See *People v. Grayson* (1980), 89 Ill. App. 3d 766, 773, 411 N.E.2d 1177, 1182, *appeal denied* (1981), 82 Ill. 2d 586.) It was far from an accusation of defense counsel's trickery, lying, or suborning perjury as in the catalogue of horrors represented by defendant's case citations.

Defendant complains that the State accused his counsel of suggesting that defendant was "framed," but in fact defense counsel had several times suggested just that. The same is true of defendant's complaint that the State accused defense counsel of suggesting that the Feuling family planted evidence.

Defendant complains that the State excessively attacked him personally by calling him a "whitened [*sic*] sepulchre" because of the contrast between his scholarly appearance at trial and his erstwhile street-gang persona. This remark did not equal the coarseness of calling a defendant a "leech on the street" and deriding defense counsel as in *People v. Williams* (1984), 127 Ill. App. 3d 231, 234, 468 N.E.2d 807, 810, which defendant cites; in addition, *Williams* found waiver for failure to object at trial (as here) and concluded that the objectionable remarks there did not constitute plain error or justify reversal. Besides, the comment about defendant here was to some extent based on the evidence; several witnesses had remarked on defendant's changed appearance, and defendant's prior gang membership was on the record at defendant's own instance. Thus, we find no prejudice to defendant from the "sepulchre" comment.

The same is true of defendant's complaint that the State brought out his former gang leadership in closing argument and thus intimated that he had a criminal history. Defendant did not object to these remarks at trial, and they were based on evidence that defendant himself had first introduced and then equivocated about.

Defendant complains that the State's reference to six policemen's conclusion that defendant was involved in the crimes destroyed his presumption of innocence. However, again, the comment produced no objection at trial, and it made no reference to defendant's presumed innocence; instead, it described the series of unusual actions and statements involving defendant that had aroused police suspicion and that were relevant to the jury's determination as to guilt. It also followed on defense counsel's suggestions that the Feuling family was combining to convict defendant. Though defendant cites *People v. Turner* (1984), 127 Ill. App. 3d 784, 469 N.E.2d 368, *appeal denied* (1984), 101 Ill. 2d 586, in that case an assistant State's Attorney had testified that he had recommended charges only after speaking with police, several witnesses, and the defendant, and the prosecutor had then implied in closing argument that charges would not have been brought unless the prosecutor thought defendant was guilty. (*Turner*, 127 Ill. App. 3d at 792-93, 469 N.E.2d at 374.) A *Turner* situation is absent here.

Defendant contends that hearsay statements were improperly admitted and later commented on at closing argument to attribute a motive to him. The State correctly responds that he did not object to several such statements at trial and that in any event an out-of-court statement is inadmissible hearsay only if offered to prove the truth of the matter it asserts. If, as in nearly every instance here, statements are offered to prove their effect on a listener's state of mind, they are nonhearsay and admissible. (*People v. Kline* (1980), 90 Ill. App. 3d 1008, 1012, 414 N.E.2d 141, 144.) In addition, a statement is not inadmissible hearsay if the declarant is available for cross-examination. *People v. Davis* (1984), 130 Ill. App. 3d 41, 52, 473 N.E.2d 387, 396, citing *People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.

Defendant complains that the State did not perfect the impeachment it attempted by questioning him in such a way as to suggest that he had expressed dissatisfaction with his job and hatred or jealousy of Feuling. Though defendant now contends that this deprived him of a fair trial, no objection in that regard was forthcoming at trial, thus creating waiver. (*People v. Lewis* (1979), 73 Ill. App. 3d 951, 960, 392 N.E.2d 707, 713, *appeal denied* (1979), 75 Ill. 2d 592.) In addition, one witness did in fact testify that defendant had ex-

pressed job dissatisfaction.

Here, while certain parts of the impeachment were left incomplete, they were not dwelt on, no objection was raised to them at trial, and they cannot fairly be said to have constituted reversible error. Any insinuations about defendant did not approach the seriousness or extensiveness of those to which objections were made in *People v. Beringer* (1987), 151 Ill. App. 3d 558, 560-62, 503 N.E.2d 778, 779-80, or those in *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353, which defendant cites, nor did the prosecutor blithely ignore a warning to complete his impeachment as in *Beringer*. (See also *People v. Redman* (1985), 135 Ill. App. 3d 534, 542, 481 N.E.2d 1272, 1278, *appeal denied* (1985), 111 Ill. 2d 560.) Neither were any insinuations here similar to those that struck at the heart of a plaintiff's medical malpractice case in *Green v. Cook County Hospital* (1987), 156 Ill. App. 3d 826, 833-34, 510 N.E.2d 3, 8, which defendant likewise cites. We note that in *Green*, reversal was ordered on the basis not merely of the egregiously incomplete impeachment but also of two other trial errors. We find no prejudice to defendant from the incomplete impeachment here.

Defendant also complains of "grossly inflammatory" cross-examination of defendant to which multiple (*i.e.*, five) objections were sustained. The case of *People v. Weinger* (1981), 101 Ill. App. 3d 857, 428 N.E.2d 924, however, which defendant cites in this regard, involved more than 20 occasions on which prosecutors persisted in asking questions to which the court had already sustained objections, and reversal was based on a concatenation of errors in addition even to those. (*Weinger*, 101 Ill. App. 3d at 871-72, 428 N.E.2d at 934-35.) In the case at bar, the sequence of inflammatory questions was comparatively brief, and none of the questions was repeated after an objection had been sustained. Noting that the objections were sustained, we find any remaining error in the mere asking of the questions to have been harmless in the context of the whole trial.

Defendant's complaint that the State melodramatically threw Feuling's clothes to the floor during closing argument is based on matters *dehors* the record to which objection was not made at trial, and we do not consider it. (107 Ill. 2d Rules 341(e)(6), (e)(7); *Berdelle v. Carpentier* (1957), 11 Ill. 2d 295, 298, 143 N.E.2d 53, 55; *Silny v. Lorens* (1979), 73 Ill. App. 3d 638, 642-43, 392 N.E.2d 267, 270-71.) By previous order, we denied defendant's motion to supplement the record in this connection through affidavit. Moreover, defendant's contention that replaying an allegedly inflammatory police tape recording at closing argument was reversible error is unsupported by

authority except belatedly in his reply brief and is not correctly presented in his opening brief (see 107 Ill. 2d Rules 341(e)(1), (e)(7)); thus, we decline to consider it as well.[1]

Improper remarks in closing argument will not constitute reversible error unless they result in substantial prejudice to the defendant. (*People v. Williams* (1984), 127 Ill. App. 3d 231, 234, 468 N.E.2d 807, 810.) Certainly, no prosecutorial error in the case at bar equaled what was condemned in cases cited by defendant. Given the minimal errors that the State has actually been shown to have committed, we find that even cumulatively they do not constitute grounds for reversal, since they were not sufficient to deprive defendant of a fair trial. See *Starks*, 116 Ill. App. 3d at 395-96, 451 N.E.2d at 1306.

In so holding, however, we emphasize our disapproval of prosecutorial overreaching and histrionics, which were detectable on the record during part of the State's case in the trial court. Overzealous, theatrical, and sometimes bizarre tactics in cross-examination and at closing argument appear to be a growing phenomenon today. Whether inspired by its prevalence on film and television, by a perceived need for more forceful persuasion to impress blase juries in a world of increased crime and violence, or simply by the sniping of opposing counsel, such behavior must not be condoned. Even when, as here, it does not mandate reversal, it often seems to betoken a prosecutor's death

---

[1]In passing, we wish to remark on the length of the briefs in this case. By granting the parties' motions for leave to file their submitted briefs *instanter* after the expiration of time previously granted, the court implicitly granted leave for those briefs to exceed the page limits established by Supreme Court Rule 341(a) (107 Ill. 2d R. 341(a)) and by the court's previous order granting defendant's motion for leave to file an 80-page brief. However, this does not mean that we approve such prolixity. Despite the rule's limit of 75 pages, defendant's opening brief reached 88 pages, counting 10 that were separately denoted by Roman numerals, and it included 31 footnotes despite the rule's admonition that footnotes are to be used sparingly. In turn, the State's brief (which, with some provocation and by permission of the court, itself consumed 102 pages) rightly objected to defendant's having used some of his footnotes to raise separate arguments that were not enumerated in his brief's statement of "Points and Authorities." The briefs here did not assume the proportions found excessive in other cases. (See *McIlvaine v. City National Bank & Trust Co.* (1939), 370 Ill. 637, 638, 19 N.E.2d 584, 584 (appellants' brief of 242 pages; appellees' brief of more than 251 pages); *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 535, 444 N.E.2d 579, 588, *aff'd in part, rev'd in part on other grounds* (1984), 99 Ill. 2d 528, 459 N.E.2d 1332 (39 footnotes in appellant's brief); *Rosenbaum Bros. & Co. v. Drumm Commission Co.* (1913), 176 Ill. App. 205, 206-07, *cert. denied* (1913), 176 Ill. App. xxviii (appellant's brief of 325 pages).) Still, the court—and perhaps the parties as well—would have been better served by greater concision. See *Palmer v. Miller* (1944), 323 Ill. App. 528, 533, 56 N.E.2d 447, 449, *appeal denied* (1944), 387 Ill. 631; Ware, *Effective Brief Writing*, 1952 U. Ill. L.F. 85, 109.

wish, threatening to snatch defeat from the jaws of victory, and it always imperils a defendant's right to a fair trial, requiring a court of review to consider whether it was so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process (*People v. Owens* (1984), 102 Ill. 2d 88, 104, 464 N.E.2d 261, 268, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 297, 105 S. Ct. 362). Prosecutors' ebullience or emotionalism must be tempered by consciousness of their oaths as officers of the court, "sworn to uphold justice for both society and the accused." (National District Attorneys Association National Prosecution Standards §17—17, Commentary, at 278 (1977).) If trial court prosecutors were required to appear in the reviewing court and explain their conduct personally, that might also be a tempering influence. In any event, it is always a trial court's duty to control the proceedings, including closing argument, on its own motion to the extent necessary to ensure a fair trial. *People v. Bernette* (1964), 30 Ill. 2d 359, 372-73, 197 N.E.2d 436, 444; *City of Chicago v. Pridmore* (1957), 12 Ill. 2d 447, 453, 147 N.E.2d 54, 58.

## VIII. Sentence

■■■ Defendant next contends that the sentences imposed on him (1) were disproportionate to his limited involvement in the crimes and the evidence of compulsion, (2) failed to take into account his rehabilitative potential, and (3) because of their consecutiveness were unwarranted and an abuse of discretion.

A reviewing court will not substitute its judgment for the trial court's in regard to sentencing, absent a clear abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) In imposing consecutive sentences, a court is required by section 5—8—4(b) of the Unified Code of Corrections to set forth their basis in the record. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(b).) Here, the trial judge heard evidence in aggravation and mitigation, noted defendant's past violent juvenile delinquency record, and four times mentioned the need to keep defendant in prison for long enough to protect society from another similar violent act on his part, which was a sufficient ground to impose consecutive sentences. *People v. Steppan* (1985), 105 Ill. 2d 310, 322, 473 N.E.2d 1300, 1306-07.

Accordingly, even though we might have assessed a different sentence if we had had that responsibility, and even though, as defendant argues, his cumulative sentence may vastly exceed the average Cook County sentence for persons who actually kill someone, we have not been presented with adequate grounds as a reviewing court on which

to set aside or modify defendant's sentence. However, we decline the State's request that we remand this cause for sentencing on the armed-robbery charges.

CONCLUSION

We therefore affirm the judgment and sentence of the circuit court of Cook County.

Affirmed.

HARTMAN, P.J., and SCARIANO, J., concur.